[No. 20753-9-I. Division One. January 17, 1989.]

THE STATE OF WASHINGTON, *Appellant,* v. RODNEY ALAN MENNEGAR, *Respondent.*

*Judge Ward Williams is serving as a judge pro tempore of the Court of Appeals pursuant to CAR 21(c).

WILLIAMS, J. Pro Tem., dissents by separate opinion.

*Seth R. Dawson, Prosecuting Attorney,* and *Seth Aaron Fine, Kevin Korsmo,* and *Andrea Dahl, Deputies,* for appellant.

*Royce Ferguson,* for respondent.

PEKELIS, J.—The State appeals from an order suppressing evidence obtained from a search incident to arrest. We affirm.

Shortly before midnight on October 11, 1986, Officer Jay Costa stopped a car for speeding. The driver appeared intoxicated and did not provide identification or a driver's license when requested to do so. While Costa was speaking with the driver, a passenger, Rodney Mennegar, stepped out of the car. Costa told him to get back in the car.

Although Costa concluded that he had insufficient evidence to charge the driver with driving while intoxicated, he would not allow him to drive. He asked the driver if Mennegar could drive the car, and having obtained his permission explained to Mennegar that he could drive the car if he had a valid driver's license. Costa then requested Mennegar's driver's license, which Mennegar handed to him. There was no reason to suspect that any crime was being committed by Mennegar. Nevertheless, Costa took the license, ran a warrant check on Mennegar, and discovered that there was an outstanding warrant for his arrest. Costa then arrested Mennegar and discovered a white powdery substance during a search incident to that arrest.

Mennegar was charged with possession of a controlled substance. He moved to suppress the evidence obtained from the search incident to arrest arguing that the information leading to his arrest was the product of an unlawful seizure. The trial court ruled that the request for Mennegar's license was unlawful[1] because Costa had no reasonable suspicion that he had engaged in criminal activity. The court further concluded that the information obtained from Mennegar's license led to his unlawful arrest and thus suppressed the evidence seized during the search. The State appeals.

It is clear that Costa had no reason to suspect Mennegar of any criminal activity. The police may not require a passenger to produce identification solely because the *driver* is suspected of criminal activity. *State v. Larson,* 93 Wn.2d 638, 642, 611 P.2d 771 (1980). The State first contends that Costa simply *requested,* and did not *require,* Mennegar to produce his license. Because the officer did not want the driver of the vehicle to drive, the State argues that this request was reasonable. Officer Costa did not need to have an articulable suspicion of criminal activity in order to make such a request. Second, the State argues that even if,

---

[1] We presume the trial court meant that the request was not merely "unlawful", but that it constituted an unlawful *seizure*.

under the circumstances, the request amounted to a seizure, it was justified in the interest of public safety.

Mennegar, on the other hand, contends that the trial court's ruling was correct, and can be upheld on the additional ground that he was unlawfully seized when Costa retained possession of his license while he ran the warrant check. He also disputes the contention that the request was justified by public safety concerns.

We first address the issue of whether Mennegar was seized when the officer requested his license. The trial court made the following conclusion of law:

(f) Under all circumstances before a law enforcement officer can ask questions of a passenger or request a passenger to produce a driver's licence the officer needs articulable facts which give rise to reasonable suspicion that the passenger has engaged in some criminal conduct. The officer's concern for public safety does not justify his request for a passenger's driver's license.

■■ The trial court's conclusion is overly broad. A request for identification, without more, is unlikely to result in a Fourth Amendment seizure. *State v. Aranguren,* 42 Wn. App. 452, 455, 711 P.2d 1096 (1985), citing *Immigration & Naturalization Serv. v. Delgado,* 466 U.S. 210, 80 L. Ed. 2d 247, 104 S. Ct. 1758 (1984); *see also United States v. Mendenhall,* 446 U.S. 544, 554–55, 64 L. Ed. 2d 497, 100 S. Ct. 1870 (1980). A seizure occurs when, in view of all the circumstances surrounding the encounter, a reasonable person would believe that he was not free to leave. *Mendenhall,* 446 U.S. at 554; *State v. Ellwood,* 52 Wn. App. 70, 73, 757 P.2d 547 (1988). Here, the trial court made a specific finding that the "defendant was free to leave and not in custody at this point."[2]

---

[2]The trial court's entire "Conclusion as to Disputed Facts" states:
"That the officer's request of defendant for a driver's license was for the purpose of defendant driving Stewart's vehicle from the scene. The officer asked Stewart if he would like his vehicle impounded or driven by defendant. Stewart said defendant could drive his vehicle. The officer then asked defendant if he would drive Stewart's vehicle and defendant agreed to do so. The officer asked defendant if he had a valid driver's license, because the officer would not allow an

However, because of the constitutional rights at issue in a suppression hearing, we independently evaluate the evidence to determine whether a defendant was seized. *State v. Daugherty,* 94 Wn.2d 263, 269, 616 P.2d 649 (1980), *cert. denied,* 450 U.S. 958, 67 L. Ed. 2d 382, 101 S. Ct. 1417 (1981). Here, we are particularly disinclined to simply accept the trial court's finding that Mennegar was not detained since the trial court focused on whether Costa believed that Mennegar was free to go rather than on whether a reasonable person in Mennegar's situation would have so believed. *See State v. Harris,* 106 Wn.2d 784, 789–90, 725 P.2d 975 (1986), *cert. denied,* 480 U.S. 940, 94 L. Ed. 2d 781, 107 S. Ct. 1592 (1987), which appears to change the test in *State v. Dictado,* 102 Wn.2d 277, 687 P.2d 172 (1984).

We have reviewed the record and find that the trial court failed to incorporate a crucial fact in its analysis. Costa and Mennegar both testified that some time before the license request, Costa told Mennegar to get back in the car. This command constitutes an unlawful detention as it was done without a reasonable suspicion of criminal activity. *See Ellwood,* 52 Wn. App. at 73–74. Since he was so detained, we cannot conclude that Mennegar's belief that he was not free to refuse when the officer asked for his license was unreasonable.

The State additionally contends that if the license request was a seizure, it was justified by public safety concerns. The State relies on *State v. Chisholm,* 39 Wn. App. 864, 696 P.2d 41 (1985), in which the court held that a balancing of competing interests rather than the reasonable suspicion test applies when police stop a vehicle for the purpose of assisting its occupants. In *Chisholm,* a police officer stopped a truck to warn its occupants that a hat was

---

invalidly licensed or unlicensed driver to drive Stewart's vehicle. The officer believed that defendant was free to refuse this request. If defendant had refused to provide driver's license the officer would only have refused to allow defendant to drive the vehicle. Further, defendant was free to leave and not in custody at this point."

about to blow out of the truck bed, and observed a can of beer between people he knew to be minors. Conducting a search incident to arrest, he discovered marijuana.

The officer in *Chisholm* did only what was necessary to carry out his purpose of assisting the truck occupants. In doing so, he inadvertently discovered evidence of criminal conduct, *i.e.*, the can of beer. Here, however, Costa admits that he stopped the vehicle in question because he had observed a traffic infraction, not because he wished to offer any assistance to the occupants of the vehicle. Thus, we reject the State's argument that public safety concerns justify the seizure.

Having determined that Mennegar was seized and that the seizure was unlawful, the only question remaining to be decided is whether the ensuing arrest and physical evidence seized was tainted by the unlawful seizure of Mennegar's person.[3] His arrest was based on Costa's discovery that there was an outstanding warrant for his arrest. This discovery was made and the ensuing arrest made, at least in part, because of Mennegar's illegally compelled *continued presence at the scene. See Ellwood,* 52 Wn. App. at 74.[4] Thus, the trial court correctly suppressed the evidence obtained during search incident to the tainted arrest. *See Ellwood; cf. Aranguren.*

---

[3]Because of our independent analysis of the facts and our application of the law pertaining thereto, it is unnecessary for us to decide whether, as the trial court concluded, merely asking for proof of a valid driver's license under noncoercive circumstances would violate constitutional principles. Nor need we decide whether holding on to a driver's license, as the record implies occurred here, in order to run a warrant check is permissible where there is no suspicion of criminal activity. *But see State v. Marchand,* 104 Wn.2d 434, 706 P.2d 225 (1985) ("spot checks" held violative of Fourth Amendment).

[4]In *Ellwood,* we held that the connection between the illegal seizure of the defendant and the seizure of evidence was not sufficiently attenuated to dissipate the taint. *State v. Ellwood,* 52 Wn. App. 70, 74–75, 757 P.2d 547 (1988). We did not, as the dissent suggests, "rely" on *State v. Rothenberger,* 73 Wn.2d 596, 440 P.2d 184 (1968), but rather distinguished Ellwood's situation from Rothenberger's. In the latter's case, the seizure of evidence was the result of information received after the illegal detention had ended. In Ellwood's case and in the case

Affirmed.

GROSSE, J., concurs.

WILLIAMS, J.* (dissenting)—The majority holds that the illegal detention of Mennegar taints the arrest made pursuant to an outstanding warrant discovered during the detention, thereby tainting the evidence seized incident to that arrest. This holding is contrary to the rules announced by the Washington Supreme Court, and accordingly, I respectfully dissent.

In *State v. Rothenberger,* 73 Wn.2d 596, 599, 440 P.2d 184 (1968), the court announced the following rule:

> It is our view that Officer Edwards, having discovered from an independent source that Rothenberger was wanted on a felony charge, *not only had the right but the duty to pursue Rothenberger and arrest him,* if that was practicable, or to get that information to officers who could intercept him.
>
> To illustrate just how ridiculous the appellants' contention is, let us assume that while detaining the appellants on an unlawful arrest, word had come over the radio that Rothenberger and Pernar were wanted for a burglary in Seattle. On appellants' theory, the officer supposedly had no alternative but to touch his hat and say, "Gentlemen, be on your way. I am sorry to have unlawfully detained you." We find neither reason nor judicial precedent for such a change in the rules of the long continued game of "Cops and Robbers."

(Italics mine.)

The majority relies upon *State v. Ellwood,* 52 Wn. App. 70, 74, 757 P.2d 547 (1988), for its decision that an illegal detention taints a subsequent arrest and incident seizure and that "coerced continued presence" of the detainee prevents any attenuation of the taint. The *Ellwood* opinion

now before us, however, the seizure of evidence occurred during the pendency of the illegal detention.

*Judge Ward Williams is serving as a judge pro tempore of the Court of Appeals pursuant to CAR 21(c).

264

cites *Rothenberger* but that case did not resolve the question of whether an arrest pursuant to an outstanding warrant is tainted by an illegal detention:

The "poison," *if any,* which had inhered in the original unlawful arrest was so greatly attenuated by the time and circumstances intervening, when the appellants went to trial for the Seattle burglary, that it had lost its potency, *if it ever had any.*

(Italics mine.) *State v. Rothenberger, supra* at 601.

I would hold that no "poison" is injected by an illegal detention into an arrest pursuant to an outstanding warrant the existence of which is learned by the officer during that detention. Accordingly, there would be no taint of the evidence seized incident to such an arrest. The "fruit of the poisonous tree" doctrine, as announced in *Wong Sun v. United States,* 371 U.S. 471, 485, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963), prevents the use of verbal or tangible evidence obtained as a result of an unlawful invasion of the home or the person. An extension of this doctrine to prevent the service of a valid outstanding warrant upon a person while illegally detained is unjustified. I respectfully dissent.

Review granted at 112 Wn.2d 1022 (1989).