**Phillip REED, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 05–90–00776–CR, 05–90–00777–CR.**

Court of Appeals of Texas, Dallas.

May 15, 1991.

942

Kenneth G. Wincorn, Dallas, for appellant.

Yolanda M. Joosten, Dallas, for appellee.

Before WHITHAM, KINKEADE and WHITTINGTON, JJ.

OPINION

WHITHAM, Justice.

Appellant appeals a conviction for unlawful possession of cocaine. Appellant's probation was revoked on a prior conviction for unlawful possession of cocaine. In two points of error, appellant contends that the trial court erred in overruling his motion to suppress and admitting the evidence seized. We disagree. Accordingly, we affirm.

The question is whether the police officer presented specific articulable facts which justified appellant's temporary detention. The State insists that appellant's detention was lawful and that once outstanding warrants for appellant's arrest were verified, appellant's arrest was also valid, as was the seizure of the cocaine during the inventory search. The facts are as follows.

When on patrol at 7:26 p.m., January 26, 1990, Dallas Police Officer R.E. Duff observed a large number of young males standing on the street corner engaging in what appeared to Duff to be a drug transaction. Duff testified that he has had experience in making drug arrests and makes approximately eight to ten such arrests each week. Duff described the persons at the corner as being in a "huddle." One person had his hand out and it appeared as if he was exchanging something. Duff identified appellant as the man holding his hand out. Duff and his partner pulled their car directly in front of the group and

asked them to put their hands on the car. The officers then conducted a pat-down search on the individuals. Duff testified that he had made many drug arrests at that same location. In Duff's experience, people are often heavily armed in that area and vacant shops in the area are used for firearm target practice.

Duff and his partner asked for identification. Appellant gave them a false name. The officers ran the name through the computer for outstanding warrants. Appellant had told Duff that he had a driver's license but did not have it with him. The computer, however, indicated that there was no license assigned to that name. Duff and his partner took appellant to the identification section to obtain a correct name. As they approached the identification section of the police department, appellant gave the officers his real name. Appellant's correct name produced outstanding warrants for appellant's arrest; the police then placed appellant under arrest and transported appellant to jail. During the book-in procedure and the inventory search, appellant's hat was searched and a baggie containing two rocks was found. The packet was field tested for the presence of cocaine; the test was positive.

■ A police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest. *Terry v. Ohio*, 392 U.S. 1, 22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968). A police officer may briefly stop a suspicious individual in order to determine his identity or to maintain the status quo momentarily while obtaining more information. *See Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972). Circumstances short of probable cause for an arrest may justify temporary detention for the purpose of investigation since an investigation is considered a lesser intrusion upon the personal security of the individual. *Gearing v. State*, 685 S.W.2d 326, 328 (Tex.Crim.App.1985). In

such circumstances, the State need not demonstrate that probable cause to arrest a suspect existed at the inception of the detention, although such a detention falls within the protection of both the federal and state constitutions. *Dickey v. State*, 716 S.W.2d 499, 503 n. 4 (Tex.Crim.App. 1986). In order to justify an investigative stop, the police officer must have specific, articulable facts that, in light of his experience and general knowledge, together with the rational inferences from those facts, would reasonably warrant the intrusion. *Anderson v. State*, 701 S.W.2d 868, 873 (Tex.Crim.App.1985), *cert. denied*, 479 U.S. 870, 107 S.Ct. 239, 93 L.Ed.2d 163 (1986).

■ In the present case, we conclude that Duff had specific, articulable facts that, in light of his experience and general knowledge, together with the rational inferences from those facts, would reasonably warrant the intrusion upon appellant. However, that intrusion resulted in appellant's removal from the scene and a trip to the police department identification section in the custody of the police. The protection of the Fourth and Fourteenth Amendments is triggered when the police, without probable cause or a warrant, forcibly remove a person from his home or other place in which he is entitled to be and transport him to the police station, where he is detained, although briefly, for investigative purposes. *Hayes v. Florida*, 470 U.S. 811, 816, 105 S.Ct. 1643, 1647, 84 L.Ed.2d 705 (1985). Such seizures, at least where not under judicial supervision, are sufficiently like arrests to invoke the traditional rule that arrests may constitutionally be made only on probable cause. *Hayes*, 470 U.S. at 816, 105 S.Ct. at 1647. *See also Lanes v. State*, 767 S.W.2d 789, 791 n. 4 (Tex.Crim. App.1989). We note that *Terry* and related Supreme Court decisions created only a limited exception to the general rule that seizures require probable cause to arrest. *Ussery v. State*, 651 S.W.2d 767, 770 (Tex. Crim.App.1983). A detention for investigatory purposes must be limited; it must be temporary and last no longer than neces-

sary to effect the progress of the stop. *Ussery*, 651 S.W.2d at 770. Nor may the police seek to verify their suspicions by means that approach the conditions of arrest. *Florida v. Royer*, 460 U.S. 491, 499, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229 (1988). In contrast to the brief and narrowly circumscribed intrusions involved in those cases, the detention of appellant in this case was in important respects indistinguishable from a traditional arrest. *See Dunaway v. New York*, 442 U.S. 200, 212, 99 S.Ct. 2248, 2256, 60 L.Ed.2d 824 (1979). Appellant was not merely briefly questioned where he was; he was taken in a police car to the police station so he could be identified; he was not free to leave. Because of these factors, we conclude that appellant was under arrest at the time he gave the police officers his real name. Because the arrest was not supported by probable cause, we conclude that the arrest was illegal. However, we also conclude that the cocaine found on appellant's person would have been inevitably discovered by legal means, derived from an independent source, or that there were intervening circumstances which attenuate the connection between the illegal detention and the discovery of contraband. In the present case, appellant ultimately gave Duff appellant's correct name. Appellant's correct name produced outstanding warrants for appellant's arrest. Appellant's arrest on those warrants resulted in the book-in procedure and inventory search in which the cocaine was found on appellant's person.

 The fruit of the poisonous tree doctrine forbids the use of evidence obtained as a result of an illegal arrest. The Fourth Amendment to the United States Constitution applied to the states through the Fourteenth Amendment and Article I, Section 9 of the Texas Constitution forbid unreasonable searches and seizures. Appellant contends that his detention and transportation to the police identification section constituted an unreasonable seizure and that the cocaine, as the fruit of the unreasonable, and therefore illegal, seizure

was inadmissible as evidence against him. *See* TEX.CODE CRIM.PROC.ANN. art. 38.23 (Vernon Supp.1991); *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964); *Wong Sun v. United States*, 371 U.S. 471, 484, 83 S.Ct. 407, 415, 9 L.Ed.2d 441 (1963). The fruit of the poisonous tree doctrine explained at length in *Wong Sun* serves to exclude not only the direct products, but also the indirect products of Fourth Amendment violations. *Armstrong v. State*, 550 S.W.2d 25, 31 (Tex.Crim.App. 1977) (on reh'g). Evidence is not classified as a fruit requiring exclusion, however, merely because it would not have been discovered "but for" the primary invasion. *Armstrong*, 550 S.W.2d at 31. The more apt question to ask is whether, granting the establishment of the primary illegality, the evidence to which objection is made has been come at by exploitation of the primary illegality or instead by means sufficiently distinguishable to be purged of the primary taint. *Armstrong*, 550 S.W.2d at 31; *Starkey v. State*, 704 S.W.2d 805, 810 (Tex.App. —Dallas 1985, pet. ref'd) (quoting *Wong Sun*, 371 U.S. at 488, 83 S.Ct. at 417). Three doctrines, which have been labeled independent source, attenuated connection, and inevitable discovery have been recognized as exceptions to the fruit of the poisonous tree doctrine and justify admission of evidence even though it is derived from information obtained in violation of the Fourth Amendment. *See Garza v. State*, 771 S.W.2d 549, 550 n. 1 (Tex.Crim.App. 1989); *Vanderbilt v. State*, 629 S.W.2d 709, 722 (Tex.Crim.App.1981), *cert. denied*, 456 U.S. 910, 102 S.Ct. 1760, 72 L.Ed.2d 169 (1982). Under the independent source exception, the unconstitutionally obtained evidence may be admitted if the prosecution can establish that it was also discovered by means independent of the illegality. *See Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 391–92, 40 S.Ct. 182, 182–83, 64 L.Ed. 319 (1920); *Autry v. State*, 626 S.W.2d 758, 764 (Tex.Crim.App. 1982). The attenuation doctrine provides that the tainted evidence may be admitted if the prosecution can show that the con-

nection between the initial illegality and the evidence has become so attenuated so as to dissipate the taint. *See Nardone v. United States,* 308 U.S. 338, 341, 60 S.Ct. 266, 268, 84 L.Ed. 307 (1939); *Wicker v. State,* 667 S.W.2d 137, 141–42 (Tex.Crim.App.1984). Under the inevitable discovery rule, evidence initially discovered in an unconstitutional manner may be received if that same evidence would have been inevitably obtained lawfully. *See Nix v. Williams,* 467 U.S. 431, 448, 104 S.Ct. 2501, 2511, 81 L.Ed.2d 377 (1984); *Dickey v. State,* 716 S.W.2d 499, 505 (Tex.Crim.App.1986). In the present case there was no investigation apart from the detention of appellant under which the evidence complained of would have come from an independent source or have been inevitably discovered.[1] Thus we conclude that if an exception to the fruit of the poisonous tree doctrine applies here, it is the attenuation doctrine; that is, the nexus between the illegal arrest and the means through which the evidence was secured has been so attenuated as to dissipate the taint. *See Wong Sun,* 371 U.S. at 491, 83 S.Ct. at 419; *Armstrong,* 550 S.W.2d at 31. We further conclude that, then, the issue presented for our determination is narrowed to: whether, when during the course of an illegal detention of appellant for the stated purpose of determining appellant's identity, a valid warrant for the arrest of appellant was discovered upon establishing appellant's identity and appellant was arrested under authority of

that warrant, contraband found during the subsequent book-in inventory search is admissible into evidence against appellant because the existence of the warrant sufficiently attenuates the connection between the illegal detention and the discovery of the contraband. This precise issue appears to be one of first impression.

In *United States v. Walker,* 535 F.2d 896, 897–98 (5th Cir.1976) a suspect was illegally detained by one officer during which detention a second officer came to the scene. The second officer, through an independent investigation, discovered probable cause to arrest the suspect and, pursuant to that arrest, discovered evidence which was admitted at the suspect's trial. The Fifth Circuit held that the situation was distinguishable from those in which evidence is obtained in direct consequence of an illegal arrest or where probable cause is discovered from the defendant himself, such as through the suspect's words or conduct as a direct result of an illegal first arrest. *Walker,* 535 F.2d at 898. In *Walker,* the only nexus between the first illegal arrest and the second legal arrest, said the Fifth Circuit, was the fact of the suspect's detention at the scene. The second arrest was based on independent probable cause developed from an independent investigation. *Walker,* 535 F.2d at 899. The court stated that to hold otherwise on the facts before it would be tantamount to adopting the "but for" test eschewed by *Wong Sun. Walker,* 535 F.2d at 899.[2] The Fifth Cir-

---

1. The "independent source" doctrine, as ordinarily applied, means that if not even the "but for" test can be met, then clearly the evidence is not the fruit of the prior Fourth Amendment violation. *See* 3 W. LaFave, Search and Seizure § 11.4(a) (1987 & Supp.1991). In the present case, the "but for" test was met. The warrants under authority of which appellant was arrested would have not been served on appellant when and where appellant was had he not already been in custody.

2. Appellate courts in the State of Washington have had an opportunity to address issues similar to the question presented by the present case. In *State v. Ellwood,* 52 Wash.App. 70, 757 P.2d 547, 550 (1988), a police officer illegally detained a suspect, obtained identification, discovered a warrant for a suspect's arrest,

searched the suspect incident to the arrest, and discovered cocaine. That court said that the suspect's continued coerced presence with the officer led to the discovery and seizure of the cocaine and that the connection between the illegal detention and seizure was not sufficiently attenuated to remove the taint. *See Ellwood,* 757 P.2d at 550. In *State v. Mennegar,* 53 Wash. App. 257, 766 P.2d 491, 494 (1989), *rev'd on other grounds,* 114 Wash.2d 304, 787 P.2d 1347, 1349 (1989), the same appeals court followed *Ellwood.* In *Mennegar,* one judge dissented, opining that once the officers found outstanding warrants for the suspect's arrest it was the officer's duty to make the arrest regardless of the surrounding circumstances. *See Mennegar,* 766 P.2d at 495 (Williams, J., dissenting). To say otherwise would be to say that the officer would have to let the suspect go because of the illegal

cuit cautioned, however, that it did not hold that an illegal arrest can always be cured by a subsequent arrest based upon probable cause. *Walker,* 535 F.2d at 899.

This court addressed a situation similar to *Walker* in 1985. In that case, a suspect emerged from his apartment with a suitcase. A police officer confronted the suspect, identified himself, and ordered the suspect to "freeze." The suspect thereupon pointed a handgun at the officer. The officer disarmed the suspect and arrested the suspect for attempted capital murder and unlawful carrying of a weapon. The officer searched the suspect incident to the arrest and discovered cocaine in the suspect's suitcase. *Matienza v. State,* 699 S.W.2d 626, 627–28 (Tex.App.—Dallas 1985, pet. ref'd). This court concluded that, while the initial stop of the suspect may have been without probable cause or reasonable suspicion, the intervening offense purged the taint of any unlawful invasion. *Matienza,* 699 S.W.2d at 628.

Our Court of Criminal Appeals, in *Johnson v. State,* 496 S.W.2d 72, 73–74 (Tex. Crim.App.1973), addressed a situation where a suspect was arrested on less than probable cause and taken to the police station where the police discovered outstanding warrants for the suspect's arrest from another county. Subsequent to the discovery of the outstanding warrants, the suspect was photographed and those photographs were used to obtain identification of the suspect as the perpetrator of a robbery. The Court of Criminal Appeals said that even if the arrest was illegal, the detention at the time the photographs were taken was not illegal because of the outstanding warrants. *See Johnson,* 496 S.W.2d at 74. Thus, the Court concluded, the identification testimony would have been obtained by means sufficiently distinguishable from

the underlying illegality to be purged of the primary taint. *Johnson,* 496 S.W.2d at 74.

In *Autry, Matienza,* and *Starkey* this court took notice of three factors which have been identified as bearing on the extent of attenuation. These factors are the temporal proximity of the illegal arrest to the discovery of evidence, the presence of intervening circumstances between the arrest and the discovery of the evidence, and the purpose and flagrancy of the official misconduct. *See Autry,* 626 S.W.2d at 764; *Starkey,* 704 S.W.2d at 810; *Matienza,* 699 S.W.2d at 628. The *Starkey* court also noted the twin policies of deterrence and judicial integrity underlying the exclusionary rule. When there is a close connection between the illegal arrest and the discovered evidence, not only is exclusion of the evidence more likely to deter similar police conduct in the future, but also use of the evidence is more likely to compromise the integrity of the courts. *See Starkey,* 704 S.W.2d at 810 (citing *Dunaway,* 442 U.S. at 219, 99 S.Ct. at 2260). With these factors and considerations in mind we proceed to the present case.

In the present case, we conclude that the temporal proximity between the first illegal arrest and the second legal arrest does not bear on the attenuation. This factor has been cited and considered exclusively in cases where confessions or statements were obtained from a suspect subsequent to an illegal arrest. *See, e.g., Autry,* 626 S.W.2d at 765; *Starkey,* 704 S.W.2d at 810–11. We also reason that, unlike the confession cases, where the statements can be seen as a psychological product of the arrest, the diminution of the likelihood of the discovery of physical evidence as a result of the illegal arrest cannot be a

---

detention notwithstanding the valid warrant. *See Mennegar,* 766 P.2d at 495 (Williams, J., dissenting). The Washington supreme court acknowledged the existence of the issue but did not decide it because that court reversed on the basis that the initial detention was legal. *Mennegar,* 766 P.2d at 1347. We decline to follow

the court in our sister state in determining this question. We agree with the Fifth Circuit in *Walker* that to hold that a suspect's continued coerced presence with an officer taints the discovery of the fruits of a search pursuant to an intervening legal arrest is tantamount to adopting the "but for" test.

function of the passage of time. Thus, we conclude that the temporal proximity factor is of no moment in this case.

The second factor to be considered is that of intervening circumstances between the illegal seizure and the evidence. In the present case the discovery of the outstanding arrest warrant and legal arrest thereunder was the relevant intervening circumstance. In connection with the discovery of that warrant, we believe that the precedents of *Johnson, Matienza,* and *Walker* control. We reason that *Johnson* stands for the proposition that discovery of an outstanding warrant during an illegal detention of an individual breaks the connection between the discovered evidence and the primary taint. Since *Johnson* concerned the taking of the suspect's fingerprints rather than the discovery of contraband, *Johnson* does not provide direct, mandatory authority. When read, however, in light of *Matienza,* which concludes that probable cause to arrest a suspect, which arises during an illegal stop out of the voluntary act of the suspect, breaks the connection between the initial detention and the seized evidence, and *Walker,* which holds that probable cause for the arrest of a suspect developed by an independent investigation during the time that a suspect was illegally detained, we conclude that *Johnson* does in fact control. We reach this conclusion because an arrest warrant is presumptively based on probable cause. *Rumsey v. State,* 675 S.W.2d 517, 520 (Tex. Crim.App.1984). Thus, we reason that the probable cause discovered in *Walker* and *Matienza* is analogous to the discovery of the warrant in *Johnson.* It follows, therefore, that the legal arrest of appellant under the warrant purged the taint of any illegality of the initial arrest. We further reason that the independent probable cause evidenced by the valid arrest warrants demonstrates that the evidence found during the search of appellant's person was not discovered through exploitation of the initial illegal arrest. *See Walker,* 535 F.2d at 899. In other words, the probable cause or authority for the second, legal, arrest was not developed by using any of the fruits of the first, illegal, arrest. *See Walker,* 535 F.2d at 899. In this connection we are mindful of the Fifth Circuit's caveat in *Walker* that the court did not hold that an illegal arrest can always be cured by a subsequent legal arrest. *See Walker,* 535 F.2d at 899. It seems abundantly clear that the Fifth Circuit was referring to the type of situation where the probable cause was developed from the initial illegality. That was not the situation in *Walker;* that is not the situation in the present case. Indeed, the main difference between *Walker* and the present case is that, in *Walker,* the probable cause for arrest was developed independently of, although contemporaneously with, the illegal detention, and in the present case the probable cause for the arrest was determined independently *and* judicially prior to the illegal detention. We conclude that, if anything, this situation is the opposite of the kind of situation the Fifth Circuit was cautioning about.

Insofar as the purpose and flagrancy of the police misconduct, the Court of Criminal Appeals has identified several types of misconduct that militate against attenuation. Such conduct includes: reliance on factors in making an arrest which were so lacking in indicia of probable cause as to render belief in its existence entirely unreasonable; an arrest effectuated as a pretext for collateral objectives; or an arrest which is unnecessarily intrusive on personal privacy. *Bell v. State,* 724 S.W.2d 780, 789 (Tex.Crim.App.1986) (citing *Brown v. Illinois,* 422 U.S. 590, 611–612, 95 S.Ct. 2254, 2265–2266, 45 L.Ed.2d 416 (1975)). In the present case, while we have decided that appellant's detention and transportation to the police identification section amounted to an arrest without probable cause and therefore was illegal, we cannot say that officer Duff relied on factors which were so lacking in indicia of probable cause so as to render belief in its existence entirely unreasonable. Duff did observe what his experience told him was a drug transaction; Duff did have reliable information that appellant lied about appellant's identity.

There is nothing in the record that indicates that the transportation of appellant to the identification section was done for the purpose of coercing a statement or providing a pretext for a search. Indeed, Duff testified without contradiction that appellant would have been returned to the original scene if the warrants had not been discovered. As to the necessity of the intrusion on personal privacy, it appears reasonably clear that there was no other way for the officers in the field to expeditiously determine appellant's identity. In view of the foregoing, we conclude that there is no showing of pretext, collateral purpose, or flagrant abuse which obviates the force of precedent with regard to the intervening discovery and execution of the arrest warrants.[3]

When a police officer has probable cause to arrest, he has the right to search the arrestee's person incident thereto. *See Miller v. State*, 667 S.W.2d 773, 778 (Tex. Crim.App.1984). In the present case, when Officer Duff learned of the warrants he then had probable cause to arrest appellant, assuming that those warrants were valid. With this probable cause to arrest came the right to search appellant's person. *See Miller*, 667 S.W.2d at 778. It follows that the trial court properly admitted the evidence seized and did not err in denying appellant's motion to suppress. We overrule appellant's two points of error.

Affirmed.

---

**3.** We reach this conclusion with some trepidation. It has been argued that this result would seem to encourage the seizure of suspects upon inadequate grounds while an investigation is conducted for the purpose of establishing probable cause or discovering the existence of arrest warrants. *See* W. LaFave, *supra* note 1 § 11.4(d) at 409. This may be a legitimate concern. However, in the face of the authority cited, we are bound to reach this result. To hold otherwise would place us on the horns of a dilemma. We would have to say that the police should have released a suspect who was in their custody illegally notwithstanding the existence of warrants for that suspect's arrest, or, alternatively, that the fruits of a search incident to a legal arrest are inadmissible because the arrest would not have occurred "but for" an illegal detention. Both possibilities have serious implications and entail line drawing that we are not prepared to do.

For example, if the police illegally detain a suspect and discover arrest warrants, may they release the suspect and re-arrest him and then conduct a legal search? If not, is he forever immune from the consequences of a search incident to a subsequent arrest under those same warrants? If so, when can they re-arrest him? After he steps outside the door of the police station? A block away? The same day? And so forth.