

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| THE STATE OF TEXAS, | § | No. 08-24-00089-CR |
| Appellant, | § | Appeal from the |
| V. | § | 327th District Court |
| BOBBIE LANKFORD, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 20220D01216) |

## MEMORANDUM OPINION

The State appeals from the trial court's granting of a pretrial motion to suppress filed by Appellee, Bobbie Lankford. In a single issue on appeal, the State asserts the trial court abused its discretion by granting the motion. We reverse the portion of the trial court's order granting the motion to suppress the results of a forensic examination on a Cricket Alcatel cell phone conducted pursuant to a search warrant issued on January 16, 2024. We affirm the order in all other respects and remand the cause to the trial court for further proceedings.

## I. MOTION TO SUPPRESS HEARING

At issue in this appeal are two search warrants. The first authorized the search of Lankford's residence and the seizure of certain electronic devices. After a forensic examination of the cell phones seized under this warrant, a second search warrant issued authorizing a forensic

examination of one of the seized cell phones. The affidavits in support of both search warrants stated the devices were suspected of containing "pornographic images and videos of children under 18 years of age at the time the visual depictions were made, identifying information for the suspected party and information that can be used to identify child victims."

Lankford filed a pretrial motion to suppress, asserting the State obtained "evidence without probable cause and without a valid warrant." More specifically, at the hearing on the motion to suppress, Lankford sought to suppress (1) the results of the first forensic examination of the electronic devices conducted after the first search warrant was executed, and (2) the results of the second forensic examination of one of Lankford's cell phones conducted pursuant to the second search warrant. At the hearing, Lankford abandoned his probable cause challenge to the search warrants.

Lankford argued the first search warrant was invalid; therefore, the results of the first forensic examination were illegally obtained and should be suppressed. Maintaining that the results of the first forensic examination led to the second search warrant, which in turn authorized the second forensic examination, Lankford argued the results of the second forensic examination also were illegally obtained and should be suppressed. At the suppression hearing, Detective Luis Reyes (who executed supporting affidavits for both warrants) and Justice of the Peace Brian Haggerty (who issued the first search warrant) testified. Both search warrants were admitted in evidence.

Reyes, a detective with the El Paso Police Department, testified that in 2022 he was assigned to the El Paso Police Department Crimes Against Children Unit. He was contacted by the Rainbow City Police Department for assistance in obtaining a search warrant for Lankford's residence and executing an arrest warrant that the police department obtained for Lankford. Reyes

2

prepared the affidavit in support of the first search warrant for Lankford's residence, which was issued by Haggerty on March 2, 2022. The first warrant authorized the search of Lankford's residence and the seizure of the following:

> Personal Computer(s), computer hardware, software, optical disks, CD Rom's, micro SD cards, flash drives, hard drives, cellular phones, cameras, camcorders, and/ or any other means of recording and/or storing electronic data, text documents, text messages, videos, handwritten notes containing passwords to computer or cell phones, ownership information of cell phones and/or computer, and any printed images depicting child pornography. To include the pins/passwords/pattern/facial/ fingerprint locks for any of the electronic devices.

Pursuant to the first warrant, several electronic devices were collected inside Lankford's residence, including a Cricket Alcatel cell phone IMEl:015320001136360 (the Cricket Alcatel). Though Reyes's affidavit supporting the first search warrant and incorporated therein requested a forensic examination of the seized items, the first search warrant did not authorize a forensic examination of any device. However, Reyes testified that a "number of cell phones" were seized pursuant to the first warrant and the cell phones "were examined under the authority of this search warrant." Reyes said the forensic examinations of the cell phones revealed identifying information linking the cell phones to Lankford "as well as a crime scene involving children." As a result of the first forensic examination, Lankford was charged with the offense of possession of child pornography.

Reyes said that because child pornography was found only on one cell phone, he prepared a second affidavit and requested the second search warrant for the Cricket Alcatel. The second search warrant was issued by District Court Judge William Moody on January 16, 2024. The second warrant authorized the seizure of "[a]ll data contained within the Cricket Alcatel Cellular phone to include: Ownership Information, Subscriber Information, Images, Videos, Attachments to messages, Applications and data (image and or videos) contained within the applications, and

3

deleted material." Police later conducted a forensic examination of the Cricket Alcatel. Reyes had no reason to believe that the first forensic search was substantively different from the second forensic search.

Haggerty testified that he is the Precinct 2 Justice of the Peace, a position he had held for 15 years. He is not a licensed attorney. He said he had signed search warrants in El Paso County a lot of times, and justices of the peace are allowed to sign search warrants so long as there is probable cause.

Following the hearing, the trial court issued the following "Findings of Fact and Conclusions of Law on [Lankford's] Motion to Suppress Evidence."[1]

2. Judge Brian Haggerty did not have legal authority to authorize the seizure of the [Cricket Alcatel] or any other cellphone collected by law enforcement on March 3, 2022.

3. The cellphones, in particular the [Cricket Alcatel], were collected without a valid search warrant.

4. The March 2, 2022[] search warrant was not compliant with the requirements of Texas Code of Criminal Procedure Section 18.0215.

5. In addition, Judge Haggerty did not have legal authority to sign a search warrant under Texas Code of Criminal Procedure Section 18.0215.

6. Therefore, the first forensic examination of the [Cricket Alcatel] and all other cell phones was conducted without a valid search warrant.

7. The results of the first forensic examination of the [Cricket Alcatel] and all the other cellphones are therefore barred and suppressed as illegally obtained.

8. The subsequent search warrant signed on January 16, 2024, by Judge William Moody was compliant with the requirements of Texas Code of Criminal Procedure Section 18.0215.

9. However, because the results of both forensic examinations are consistent with each other, and the results of the first forensic examination are already suppressed, the results of the second forensic analysis are also barred and suppressed as illegally obtained.

---

[1] The first conclusion addressed the existence of probable cause.

The State filed a Notice of Appeal and certified "that jeopardy has not yet attached in this case, that the appeal is not taken for the purpose of delay, and that the evidence is of substantial importance to the case."[2]

## II.   APPLICABLE LAW AND STANDARD OF REVIEW

### A.   Search warrants

The issuance of a search warrant is governed by Texas Code of Criminal Procedure Articles 18.01 and 18.02. Article 18.01 defines a "search warrant" as "a written order, issued by a magistrate and directed to a peace officer, commanding him to search for any property or thing and to seize the same and bring it before such magistrate or commanding him to search for and photograph a child and to deliver to the magistrate any of the film exposed pursuant to the order." Tex. Code Crim. Proc. Ann. art. 18.01(a). Under Article 18.02, a search warrant may be issued to search for and seize any number of items, including "any property the possession of which is prohibited by law" and "implements or instruments used in the commission of a crime[.]" *Id.* art. 18.02(a)(8), (9).

A search warrant also may be issued to search for and seize "property or items, except the personal writings by the accused, constituting evidence of an offense or constituting evidence tending to show that a particular person committed an offense." *Id.* art. 18.02(a)(10). A search warrant issued under subsection (a)(10) is referred to as an evidentiary warrant. *Porath v. State*, 148 S.W.3d 402, 408 (Tex. App.—Houston [14th Dist.] 2004, no pet.); *Mullican v. State*, 157 S.W.3d 870, 873 (Tex. App.—Fort Worth 2005, pet. ref'd). "Only judges of municipal courts of record licensed as attorneys, statutory county or district judges, or judges from the Court of

---

[2] The Texas Code of Criminal Procedure permits the State to appeal an order that "grants a motion to suppress evidence . . . if jeopardy has not attached" and "if the prosecuting attorney certifies" that "the evidence, confession, or admission is of substantial importance in the case." Tex. Code Crim. Proc. Ann. art. 44.01(a)(5).

Criminal Appeals or Supreme Court may issue evidentiary warrants under article 18.02(10)." *Scott v. State*, 868 S.W.2d 430, 432 (Tex. App.—Waco 1994, pet. ref'd); Tex. Code Crim. Proc. Ann. art. 18.01(c) ("Except as provided by Subsections (d), (i), and (j), only a judge of a municipal court of record or a county court who is an attorney licensed by the State of Texas, a statutory county court judge, a district court judge, a judge of the Court of Criminal Appeals, including the presiding judge, a justice of the Supreme Court of Texas, including the chief justice, or a magistrate with jurisdiction over criminal cases serving a district court may issue warrants under Article 18.02(a)(10)."). "A search warrant issued under article 18.02(a)(10) is subject to a heightened requirement."[3] *Becerra v. State*, No. 13-20-00055-CR, 2021 WL 2584394, at *3 (Tex. App.—Corpus Christi June 24, 2021, no pet.) (mem. op., not designated for publication); Tex. Code Crim. Proc. Ann. art. 18.01(c). Subsection (a)(10) is a catchall ground that applies only if the specific items enumerated in subsections (a)(1) through (a)(9) are not being sought. *Becerra*, 2021 WL 2584394, at *3; *see Scott*, 868 S.W.2d at 432.

Finally, Article 18.02 also authorizes a warrant for the search and seizure of "a cellular telephone or other wireless communications device, subject to Article 18.0215." Tex. Code Crim. Proc. Ann. art. 18.02(a)(14). A warrant under Article 18.0215 for a cell phone or other wireless communications device "may be issued only by a judge, including a judge of a statutory county court, in the same judicial district as the site of: (1) the law enforcement agency that employs the peace officer, if the cellular telephone or other wireless communications device is in the officer's

---

[3] The heightened requirements pertaining to Article 18.02(a)(10) provide that "[a] search warrant may not be issued under [subsection (a)(10)] unless the sworn affidavit . . . sets forth sufficient facts to establish probable cause: (1) that a specific offense has been committed, (2) that the specifically described property or items that are to be searched for or seized constitute evidence of that offense or evidence that a particular person committed that offense, and (3) that the property or items constituting evidence to be searched for or seized are located at or on the particular person, place, or thing to be searched." Tex. Code Crim. Proc. Ann. art. 18.01(c).

possession; or (2) the likely location of the telephone or device." *Id.* art. 18.0215(b); *see also id.* art. 18.0215(c) (stating what application for warrant must contain).[4]

### B. Standard of review

We review a trial court's ruling on a motion to suppress for an abuse of discretion, and we do so under a bifurcated standard of review. *State v. Torres*, 666 S.W.3d 735, 740 (Tex. Crim. App. 2023). "On the one hand, we afford almost total deference to the trial court's determination of historical facts and the trial court's rulings on mixed questions of law and fact, especially when those determinations are based on an assessment of credibility and demeanor." *Id.* "On the other hand, we review pure questions of law, as well as mixed questions of law and fact that do *not* turn on an assessment of credibility and demeanor, on a de novo basis." *Id.* at 740–41; *see also Wehrenberg v. State*, 416 S.W.3d 458, 464 n.3 (Tex. Crim. App. 2013) (holding that whether court of appeals erred by deciding that independent source doctrine conflicts with statutory exclusionary rule and is inapplicable in Texas was a question of law to be reviewed de novo).

We will sustain a trial court's ruling admitting the evidence if the ruling is reasonably supported by the record and correct on any theory of law applicable to the case. *Laney v. State*, 117 S.W.3d 854, 857 (Tex. Crim. App. 2003) (en banc). "This is so even if the trial judge gives the wrong reason for the decision." *Id.*

---

[4] Article 18.0215 also states that "[a] peace officer may not search a person's cellular telephone or other wireless communications device, pursuant to a lawful arrest of the person without obtaining a warrant under this article." *Id.* art. 18.0215(a).

# III. The First Search Warrant and Forensic Examination

In addition to finding that sufficient probable cause existed for the issuance of the first search warrant, the trial court made the following conclusions of law relevant to the first search warrant and the first forensic examination:

2. Judge Brian Haggerty did not have legal authority to authorize the seizure of the [Cricket Alcatel] or any other cellphone collected by law enforcement on March 3, 2022.

3. The cellphones, in particular the [Cricket Alcatel], were collected without a valid search warrant.

4. The March 2, 2022[] search warrant was not compliant with the requirements of Texas Code of Criminal Procedure Section 18.0215.

5. In addition, Judge Haggerty did not have legal authority to sign a search warrant under Texas Code of Criminal Procedure Section 18.0215.

6. Therefore, the first forensic examination of the [Cricket Alcatel] and all other cell phones was conducted without a valid search warrant.

7. The results of the first forensic examination of the [Cricket Alcatel] and all the other cellphones are therefore barred and suppressed as illegally obtained.

## A. Parties' arguments

On appeal, Lankford argues, first, that because the first search warrant did not authorize the search of any data contained in any of Lankford's electronic devices, the first forensic examination of the devices was illegal. Alternatively, Lankford argues that if the first search warrant authorized the first forensic examination, then that examination was illegal because Haggerty does not have the authority to sign such a warrant under Texas Code of Criminal Procedure Article 18.0215, which authorizes only a "judge" to issue such a warrant. *See* Tex. Code Crim. Proc. Ann. art. 18.0215(b) ("A warrant under this article may be issued *only by a judge* . . . .") (emphasis added). At the hearing, Lankford also argued a justice of the peace is not authorized to sign an Article 18.02(a)(10) evidentiary warrant. Furthermore, Lankford contends the first search warrant was invalid to authorize a forensic examination of any electronic device

8

under Article 18.0215 because the affidavit supporting the first search warrant did not satisfy Article 18.0215's requirement that it "identify the cellular telephone or other wireless device to be searched[.]"[5] *Id.* art. 18.0215(c)(2).

The State asserts a justice of the peace has the authority to issue a search warrant for the search and seizure of property, under Article 18.02, subsection (a)(2) ("property specially designed, made, or adapted for or commonly used in the commission of an offense"); subsection (a)(8) ("any property the possession of which is prohibited by law");[6] and subsection (a)(9) ("implements or instruments used in the commission of a crime"). *See id.* art. 18.02(a)(2), (8), (9). The State contends that the Cricket Alcatel seized and searched pursuant to the first search warrant was such property because the supporting affidavit clearly established there was probable cause to believe that the cell phone and other devices seized and searched contained child pornography.

Regarding the first forensic examination, the State contends the first search warrant "specifically incorporated [Detective Reyes's] affidavit for all purposes" and the affidavit requested a forensic examination. Therefore, the State argues, the first search warrant did not need to expressly authorize a forensic examination of the items seized under the warrant. The State also asserts Article 18.0215 comes into play only after an arrest. *Id.* art. 18.0215(a) ("A peace officer may not search a person's cellular telephone or other wireless communications device, pursuant to a lawful arrest of the person without obtaining a warrant under this article."). According to the

---

[5] The affidavit requested the "issuance of a warrant that will authorize the search of said suspected place and party for said personal property, the seizure of the same, the forensic examination of the seized items to include any locked devices and the seizure of any pins/passwords/pattern/facial/fingerprints of any locked devices."

[6] On appeal, Lankford asserts subsection (a)(8) has no application here because the possession of a cell phone is not illegal. The State counters that subsection (a)(8) applies because it is illegal to possess child pornography.

State, because the first search warrant issued independent of Lankford's arrest, Article 18.0215 does not apply to invalidate the first warrant or the first forensic examination.

## B. Analysis

In this case, the first search warrant authorized the search of Lankford's residence and the seizure of the following:

> Personal Computer(s), computer hardware, software, optical disks, CD Rom's, micro SD cards, flash drives, hard drives, cellular phones, cameras, camcorders, and/ or any other means of recording and/or storing electronic data, text documents, text messages, videos, handwritten notes containing passwords to computer or cell phones, ownership information of cell phones and/or computer, and any printed images depicting child pornography. To include the pins/passwords/pattern/ facial/fingerprint locks for any of the electronic devices.

The first search warrant was a valid warrant authorizing the search for and seizure of "property specially designed, made, or adapted for or commonly used in the commission of an offense"; "any property the possession of which is prohibited by law"; and "implements or instruments used in the commission of a crime." *See id.* art. 18.02(a)(2), (8), (9). Because the first search warrant authorized a search for and seizure of items listed under grounds other than subsection (a)(10), we conclude that it was not a "mere evidentiary search warrant" subject to heightened standards and Haggerty therefore was authorized to sign it.[7] *See Becerra*, 2021 WL 2584394, at *3 (concluding search warrant sought "more than 'mere evidence,' such 'that additional findings under (a)(10) are not required' and a magistrate of a non-record municipal court had the authority to sign this warrant"); *Scott*, 868 S.W.2d at 433 (warrant specifically described items that were either property, the possession of which was illegal, or implements or instruments used in the commission of a crime—possession of child pornography that fell within subsection

---

[7] The parties agree, as does this Court, that a justice of the peace may authorize the search for and seizure of items pursuant to Articles 18.01 and 18.02.

10

(8) or (9); therefore, justice of the peace had authority to issue the search warrant); *State v. Acosta*, 99 S.W.3d 301, 303 (Tex. App.—Corpus Christi 2003, pet. ref'd) ("A justice of the peace fails to meet the requirements of article 18.01(c), and may not issue warrants pursuant to article 18.02(10)[; however,] article 18.01(a) permits any magistrate, including justices of the peace who lack a license to practice law, to issue all other types of search warrants included in article 18.02.").

Contrary to the State's contention that the first warrant authorized the search of the *contents* of any electronic device at the Lankford residence simply by incorporating Reyes's affidavit, the first warrant did not authorize a search of the contents of the Cricket Alcatel. "When a search warrant affidavit is incorporated into a search warrant, it becomes a part of, and can be used to aid the description in, the search warrant." *See Patterson v. State*, 663 S.W.3d 155, 158 (Tex. Crim. App. 2022). However, here, the warrant specifically commanded law enforcement "to enter the suspected place described in said Affidavit and to there search for the personal property described in said Affidavit and to seize same and bring it before [Haggerty] . . . ." It did not authorize a forensic search of the devices themselves. Accordingly, the trial court erred by concluding the first warrant was invalid.

But because the first search warrant did not authorize a forensic examination of the contents of any electronic device, the police were without authority to examine the contents of the cell phone at issue. In the alternative, the State argues the first forensic examination was proper because Reyes acted in good faith. "No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case." Tex. Code Crim. Proc. Ann. art. 38.23(a). Article 38.23 contains an exception to this exclusionary rule for evidence "obtained by a law enforcement officer acting in objective good

11

faith reliance upon a warrant issued by a neutral magistrate based on probable cause." *Id.* art. 38.23(b). "The exception plainly requires objective, rather than subjective, good-faith reliance upon a search warrant." *Wheeler v. State*, 616 S.W.3d 858, 863 (Tex. Crim. App. 2021); *see also State v. Arellano*, No. 13-17-00268-CR, 2020 WL 6504560, at *4 (Tex. App.—Corpus Christi Nov. 5, 2020, no pet.) (mem. op., not designated for publication) (holding officer's subjective testimony was not required to determine whether evidence supported a finding that he acted in objective good-faith reliance upon the warrant when he obtained a sample of Arellano's blood).

Although the first search warrant stated Reyes's affidavit was "here now made part hereof for all purposes," as stated above, the warrant only commanded law enforcement to enter the residence described, search for the personal property described, and bring it to Haggerty, as well as to "arrest and bring before [Haggerty] each suspected party named in said Affidavit." The warrant then stated in bold lettering the "Places to be searched" followed by the physical address of Lankford's residence. It also stated in bold lettering the "Property/Items to be seized[.]" The first warrant did not authorize the seizure of any data contained within the "Property/Items to be seized." Applying the objective standard to the facts here, the requirement was not satisfied because no objectively reasonable officer would submit electronic devices for a forensic examination knowing the warrant authorizing the search for and seizure of the devices did not mention, much less authorize, such a forensic examination. *See McClintock v. State*, 541 S.W.3d 63, 73–74 (Tex. Crim. App. 2017) (assessing whether officers acted in good-faith reliance on a warrant in terms of how "close to the line of validity" their actions were). Accordingly, we conclude that the good-faith exception does not apply.

For these reasons, we conclude the trial court did not err in concluding that "the first forensic examination of the [Cricket Alcatel] and all other cell phones was conducted without a

valid search warrant," and the results of the first forensic examination should be suppressed. The next issue then is whether the trial court erred by concluding that "because the results of both forensic examinations are consistent with each other, and the results of the first forensic examination are already suppressed, the results of the second forensic analysis are also barred and suppressed as illegally obtained."

## IV. THE SECOND SEARCH WARRANT AND FORENSIC EXAMINATION

The parties do not dispute, and this Court agrees, that Judge Moody was authorized to sign the second search warrant under Article 18.0215, which authorized the forensic examination of the contents of the Cricket Alcatel. The issue is whether the results of this second forensic examination should be suppressed.

Lankford argues that the information obtained from the illegal first forensic examination led to information that was used to obtain the second search warrant, which did not cure the deficiencies in the first search warrant and the State therefore cannot rely on either the attenuation doctrine or the "inevitable discovery rule" to admit the evidence.[8] Lankford argues that "not only did [the first forensic examination] contribute in *some* way, it was the very means by which the evidence was obtained." The State counters that the second search warrant was "independently sourced" from Reyes's second affidavit. We agree with the State.

---

[8] "Under the inevitable discovery rule, evidence initially discovered in an unconstitutional manner may be received if that same evidence would have been inevitably obtained lawfully." *Reed v. State*, 809 S.W.2d 940, 945 (Tex. App.—Dallas 1991, no pet.). However, "the language of Article 38.23 plainly does not accommodate a doctrine of inevitable discovery." *State v. Daugherty*, 931 S.W.2d 268, 270 (Tex. Crim. App. 1996) (en banc). "The inevitable discovery doctrine assumes a causal relationship between the illegality and the evidence." *Id.* "It assumes that the evidence was actually 'obtained' illegally [and the] doctrine then asks whether the evidence would have been 'obtained' eventually in any event by lawful means." *Id.* "But the fact that evidence could have been 'obtained' lawfully anyway does not negate the fact that it was in fact 'obtained' illegally." *Id.* "Under Article 38.23 the inquiry regarding the possible legal attainment of the evidence should never be reached." *Id.* "Once the illegality and its causal connection to the evidence have been established, the evidence must be excluded." *Id.*

13

"Article 38.23 addresses the admissibility of evidence at trial when the law has been violated." *Day v. State*, 614 S.W.3d 121, 128 (Tex. Crim. App. 2020). "Doctrines such as 'the fruit of the poisonous tree', 'attenuation of taint', and 'the independent source doctrine' refine the situations in which the illegally obtained evidence can be admitted at or excluded from trial." *Id.* "The attenuation doctrine provides that the tainted evidence may be admitted if the prosecution can show that the connection between the initial illegality and the evidence has become so attenuated so as to dissipate the taint." *Reed v. State*, 809 S.W.2d 940, 944–45 (Tex. App.—Dallas 1991, no pet.). "Under the independent source exception, the unconstitutionally obtained evidence may be admitted if the prosecution can establish that it was also discovered by means independent of the illegality." *Id.* at 944.

Although the parties disagree over whether the attenuation doctrine applies, we conclude the independent source doctrine is applicable to the facts presented here. *Harper v. State*, No. 08-23-00106-CR, 2024 WL 3579499, at *17 (Tex. App.—El Paso July 29, 2024, pet. ref'd) (mem. op., not designated for publication) (on appeal, appellant and State focused their arguments on whether there was probable cause and exigent circumstances justifying the seizure of appellant's cell phone; however, the court "ground[ed its] analysis and holding on a different principle—the independent source doctrine").

"[E]vidence obtained pursuant to an independent source, much like evidence for which a prior taint has been attenuated, is not 'obtained' in violation of the law and is thus not subject to suppression." *Wehrenberg*, 416 S.W.3d at 468; *Harper*, 2024 WL 3579499, at *17 (noting that the independent source doctrine applies to State suppression rules). "[T]he independent source doctrine provides that evidence actually obtained pursuant to a distinct, untainted source is not subject to suppression because, in such cases, the prior illegality does not contribute in any way to

discovery of the evidence seized under the warrant." *Wehrenberg*, 416 S.W.3d at 469 (internal quotation marks omitted).

In this case, the results of the second forensic examination were discovered through "independent legal means" in Reyes's second affidavit, submitted in support of the second search warrant which provided probable cause separate from the results of the first forensic examination. Reyes's second affidavit based probable cause on the "Facts of the Case" section, which detailed the investigation conducted by the Rainbow City Police Department that eventually led to that department obtaining two arrest warrants, pursuant to Alabama law, for Lankford for transmitting obscene material to a child by computer. The Rainbow City Police Department's investigation lead to the discovery of Lankford residing in El Paso, Texas. Reyes also described other investigations by the El Paso Police Department and the Fresno California Police Department into Lankford regarding his alleged online communications with underage females. These factual allegations satisfied Article 18.0215's requirement that the application for a warrant "state the facts and circumstances that provide the applicant with probable cause to believe that: (A) criminal activity has been, is, or will be committed; and (B) searching the [cell phone] is likely to produce evidence in the investigation of the criminal activity described in Paragraph (A)." Tex. Code Crim. Proc. Ann. art. 18.0215(c)(5).[9]

This is not an instance where "but for" the police misconduct, the evidence would not have been discovered. Therefore, we conclude Reyes's second affidavit contained sufficient probable cause—independent of the results of the first forensic examination—to justify issuance of the

---

[9] We note that Reyes's second affidavit also states, just before the "Conclusion" section, that "[t]he search of SUSPECT DEVICE 1 uncovered child pornography, but Affiant is seeking a secondary search warrant more in compliance with Article 18.0215 of the Texas Code of Criminal Procedure. SUSPECT DEVICE 1 has remained in the custody of EPPD since the initial seizure and has been preserved in a way to prevent any data loss or changes." We do not interpret this sentence as a statement of fact for the purpose of establishing probable cause.

15

second search warrant and forensic examination. *See Harper*, 2024 WL 3579499, at *18 (finding an independent source where police's later warrant was predicated upon a supporting affidavit that alleged facts taken from hospital staff, appellant's fiancé, and CPS, not from the initial seizure of the phone).

## V. CONCLUSION

For the reasons stated above, we reverse the portion of the trial court's order granting the motion to suppress the results of the forensic examination conducted on the Cricket Alcatel cell phone pursuant to the search warrant issued by Judge Moody on January 16, 2024. We affirm the order in all other respects and remand the cause to the trial court for further proceedings.

LISA J. SOTO, Justice

May 27, 2025

Before Salas Mendoza, C.J., Palafox and Soto, JJ.
Palafox, J., concurring without written opinion

(Do Not Publish)