**Harvey Iken WELCOME, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 05–92–01251–CR.**

Court of Appeals of Texas, Dallas.

Aug. 24, 1993.

Rehearing Denied Nov. 9, 1993.

Lawrence G. Boyd, Dallas, for appellant.

Michael J. Sandlin, Dallas, for appellee.

Before OVARD, MALONEY and ROSENBERG, JJ.

## OPINION

ROSENBERG, Justice.

Harvey Iken Welcome was convicted of possession of cocaine. The trial court assessed punishment, enhanced by two prior convictions, at twenty-five years' confinement. In four points of error, appellant complains that the trial court erred by overruling his motion to suppress evidence and by admitting hearsay testimony at the suppression hearing. We overrule appellant's points of error and affirm the trial court's judgment.

## FACTUAL BACKGROUND

At the suppression hearing, Dallas Police Officer James Hulsey testified that he and his partner, Officer Lee Bush, responded to a disturbance call at an apartment complex on September 21, 1991. The complainant reported that drug dealers were shooting guns. The officers were informed that the complainant described one of the suspects as a young black male wearing a black cap and a black leather jacket.

When Officers Hulsey and Bush arrived at the apartment complex, they saw appellant and three other young men. One of the men matched the description given by the complainant. Two other officers arrived at the apartment complex about the same time as Hulsey and Lee. The officers parked their cars, approached the suspects, and conducted pat-down searches. No weapons were found. The officers interviewed the suspects and asked them for identification. At some point in the investigation, the officers took the suspects to the police cars, which were parked on the street thirty to forty feet away, and instructed them to sit on the

ground with their hands on top of their heads.

When appellant's identification was checked through the computer, the return information indicated that appellant had an outstanding warrant for driving a motor vehicle without a driver's license. Officer Hulsey placed appellant under arrest and handcuffed him. Officer Hulsey then conducted a custodial search of appellant and found cocaine in his pocket.

## MOTION TO SUPPRESS

In his first three points of error, appellant contends that the trial court erred in overruling his motion to suppress evidence. Appellant claims that his detention and the subsequent seizure of the cocaine were in violation of the United States Constitution, the Texas Constitution, and article 38.23 of the Texas Code of Criminal Procedure.

### A. Standard of Review

■ The standard of review governing a trial court's ruling on a motion to suppress is whether the court clearly abused its discretion. *Maddox v. State*, 682 S.W.2d 563, 564 (Tex.Crim.App.1985). At a suppression hearing, the trial judge is the sole fact finder and, as such, may accept or reject any or all of a witness's testimony. *Taylor v. State*, 604 S.W.2d 175, 177 (Tex.Crim.App. [Panel Op.] 1980). If the trial court's findings of fact are supported by the record, we are not at liberty to disturb them. *Green v. State*, 615 S.W.2d 700, 707 (Tex.Crim.App. [Panel Op.] 1980), *cert. denied*, 454 U.S. 952, 102 S.Ct. 490, 70 L.Ed.2d 258 (1981). We only consider whether the trial court improperly applied the law to the facts. *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App. 1990).

### B. Investigative Detention

■ A police officer may briefly stop a suspicious individual to determine his identity or to maintain the status quo while obtaining more information. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Hoag v. State*, 728 S.W.2d 375, 380 (Tex. Crim.App.1987). An officer may also conduct a limited search for weapons when rea-

sonably warranted for his safety or the safety of others. *Ramirez v. State*, 672 S.W.2d 480, 482 (Tex.Crim.App.1984). Because a temporary detention intrudes on an individual's security less than a formal arrest, circumstances which do not constitute probable cause for arrest may justify a temporary detention. *Leighton v. State*, 544 S.W.2d 394, 396 (Tex.Crim.App.1976). To justify such a detention, a police officer must have specific articulable facts, which in light of the officer's experience and personal knowledge, together with rational inferences from those facts, would reasonably warrant the intrusion. *Ramirez*, 672 S.W.2d at 482. The officer must have a reasonable suspicion that some activity out of the ordinary is occurring or has occurred, some suggestion to connect the detained person with the unusual activity, and some indication that the activity is related to a crime. *Johnson v. State*, 658 S.W.2d 623, 626 (Tex.Crim.App.1983).

■ In the present case, the officers received a call that young men at an apartment complex were shooting guns. Discharging a firearm in a public place is a criminal offense. Tex.Penal Code Ann. § 42.01(a)(9) (Vernon Supp.1993). The officers had a description of one of the suspects. When they reached the location of the disturbance, they saw a group of men, one of whom matched the description. These facts connected the suspects with the activity under investigation. At this point, the circumstances warranted stopping appellant and the other men to investigate the situation. Therefore, we conclude that the officers had reasonable suspicion to justify the initial detention.

■ Appellant contends that, even if the detention was justified at its inception, it was unlawfully prolonged after all legitimate investigation of the disturbance had ended. First, appellant argues that because the investigation concerned the firing of a gun, once he was searched and no weapon was found, the investigation was complete and the officers should have left. We disagree. The mere absence of a gun when the officers searched appellant does not conclusively establish that he was not involved in the disturbance. Furthermore, all legitimate investi-

gation of the disturbance did not end after the pat-down search. For example, in the course of a temporary detention, an officer is allowed to detain an individual in order to determine his identity. *See Hoag*, 728 S.W.2d at 380.

Second, appellant argues that the officers were informed that he was not involved in the disturbance. Appellant claims that this information came from Charlene Hopkins, who testified, during the suppression hearing, that she called the police and reported the disturbance. Hopkins testified that when the officers arrived she told them that the man who was shooting the gun had gone into one of the buildings and that the men they were questioning were not involved in the disturbance. Thus, appellant contends that the officers no longer had reason to believe he was involved in the disturbance. However, both officers Hulsey and Bush stated that they did not recall speaking to Hopkins or hearing her say anything. On appeal, an appellate court does not engage in its own factual review. *Romero*, 800 S.W.2d at 543. Therefore, appellant's argument is without merit.

■ Next, appellant contends that the detention was prolonged solely for the purpose of checking for outstanding warrants, which is a reason not related to the initial investigation. This Court, however, has already held that it is reasonable for police officers to check for outstanding warrants while confirming a suspect's identification. *Petty v. State*, 696 S.W.2d 635, 639 (Tex. App.—Dallas 1985, no pet.). Appellant argues that our holding in *Petty* is distinguishable because, in the present case, all legitimate investigation of the disturbance had ended before the officers checked for outstanding warrants. As we have already discussed however, appellant's assumption is incorrect. Therefore, we hold that appellant was not detained for a reason unrelated to the investigation.

### C. Illegal Arrest

■ We now address appellant's contention that he was placed under arrest, without probable cause, prior to the detection of the outstanding warrant. In determining whether an arrest has been made, the test is whether, in view of all relevant circumstances, there has been such a display of official authority that a reasonable person would believe he is not free to leave. *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980). An arrest is complete when the person's liberty of movement is restricted or restrained. *Hoag*, 728 S.W.2d at 379. The Texas Code of Criminal Procedure defines an arrest to have occurred when a person is actually placed under restraint or taken into custody by an officer. TEX.CODE CRIM.PROC.ANN. art. 15.22 (Vernon 1977).

■ Appellant argues that the investigative detention was transformed into an arrest when the officers walked him to their squad cars and forced him to sit on the ground with his hands on top of his head. The distinction between an investigative detention and an arrest was discussed by the Texas Court of Criminal Appeals in *Amores v. State*, 816 S.W.2d 407 (Tex.Crim.App.1991). In *Amores*, a police officer received a radio call for a "burglary in progress" at an apartment building. *Id.* at 410. The officer drove into the apartment building's parking lot as the appellant began to drive his car out of a parking space. *Id.* The officer blocked appellant's car in the parking lot, drew his service revolver, ordered the appellant from his car at gunpoint, and ordered him to lie face down on the pavement with his hands behind him. *Id.* The court held that these facts demonstrated that the appellant's liberty had been restricted or restrained to such a degree as to constitute an arrest. *Id.* at 412.

Although the degree of control exercised over appellant in this case is not as severe as in *Amores*, we hold that appellant's liberty was nonetheless restricted to such a degree as to constitute an arrest. In a case with facts similar to the one before us, *Campbell v. State*, 644 S.W.2d 154 (Tex.App.—Austin 1982), *pet. ref'd per curiam*, 647 S.W.2d 660 (Tex.Crim.App.1983), the court held that the appellants were in custodial arrest when they were instructed to seat themselves on a guardrail with their hands in their laps. *Id.* at 160. The facts and circumstances in *Campbell* provided the arresting officer rea-

sonable suspicion to stop a van to investigate a robbery. *Id.* at 159–60. When the officer saw that the van's four occupants closely matched the description of the robbery suspects, he ordered them all to get out of the van. *Id.* at 160. The officer then instructed the appellants and the two other suspects to seat themselves on a guardrail with their hands in their laps. *Id.* The Austin Court of Appeals concluded that at this point the appellants were not at liberty to leave and were, therefore, under arrest. *Id.* Similarly, we conclude that the temporary detention of appellant became an arrest when his liberty of movement was restrained.

In the course of their investigation, the officers instructed appellant to sit on the ground with his hands placed on the top of his head. At this point, appellant's liberty of movement was sufficiently restrained to constitute an arrest. The State contends, for purposes of the investigation, it was necessary to move appellant to the squad cars and place him on the ground. The State argues that the officers did this for their safety. However, because the initial pat down of the suspects did not reveal a weapon, the officers' concern for safety does not justify the restraint. In addition, since there were four officers on the scene and four suspects, the likelihood that the detainees would overpower the police officers is minimal. An action tantamount to arrest has taken place if the officer's conduct is more intrusive than necessary for an investigative stop. *See Burkes v. State*, 830 S.W.2d 922, 925 (Tex.Crim.App. 1991). Based on the facts of this case, we hold that the officers' conduct was more intrusive than necessary.

As the purpose of a temporary detention is to determine, through questioning, if illegal activity is taking place, the police officers' intrusive behavior was not consistent with a mere investigation. We hold that appellant was under arrest before the officers were aware of the outstanding warrant. Therefore, the officers did not have probable cause to arrest appellant at this time. Accordingly, we hold that appellant's detention resulted in an illegal arrest.

### D. Attenuation Doctrine

 As a general rule, the fruit of the poisonous tree doctrine forbids the use of evidence obtained following an illegal arrest. *See Wong Sun v. United States*, 371 U.S. 471, 484, 83 S.Ct. 407, 415, 9 L.Ed.2d 441 (1963). There are, however, exceptions to this doctrine. One of those exceptions, the attenuation doctrine, provides that evidence may be admitted if the connection between the initial illegality and the means through which the evidence was secured is so attenuated as to dissipate the taint. *See Wicker v. State*, 667 S.W.2d 137, 141–42 (Tex.Crim. App.), *cert. denied*, 469 U.S. 892, 105 S.Ct. 268, 83 L.Ed.2d 204 (1984). The discovery of an outstanding warrant during an illegal detention of an individual may break the connection between the primary taint and subsequently discovered evidence. *See Johnson v. State*, 496 S.W.2d 72, 74 (Tex.Crim.App. 1973).

This Court has previously held that cocaine found during a search pursuant to a legal arrest was admissible even though the appellant's initial detention was illegal. *Reed v. State*, 809 S.W.2d 940, 948 (Tex.App.— Dallas 1991, no pet.). In *Reed* the appellant was taken to the police station to determine his identity. *Id.* at 943. This Court held that the appellant was not free to leave and, therefore, under arrest illegally because the arrest was not supported by probable cause. *Id.* at 944. While illegally detained, the appellant gave the officers his name. When a check of appellant's name produced outstanding warrants for his arrest, the police formally placed appellant under arrest. *Id.* at 943. During the book-in procedure and inventory search, a baggie containing cocaine was found. *Id.* This Court held that the discovery of the outstanding warrants and the legal arrest under the warrants were intervening circumstances which attenuate the connection between the illegal detention and the discovery of the cocaine. *Id.* at 944.

 Appellant argues that our decision in *Reed* is incorrect in light of the Texas Code of Criminal Procedure and a recent decision from the Texas Court of Criminal Appeals.[1]

---

1. *Garcia v. State*, 829 S.W.2d 796, 800 (Tex.Crim. App.1992).

Article 38.23 of the Texas Code of Criminal Procedure provides that "[n]o evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on trial of any criminal case." TEX. CODE CRIM.PROC.ANN. art. 38.23(a) (Vernon Supp.1993). In construing article 38.23, the court of criminal appeals stated that the inevitable discovery doctrine is not an exception to the statutory exclusionary rule. *Garcia v. State*, 829 S.W.2d 796, 800 (Tex.Crim.App. 1992). Recognizing that article 38.23 expressly contains a legislatively created exception,[2] the court reasoned that the judicial adoption of other exceptions to the rule would undermine the legislature's function. *Id.* at 798–800.

Appellant contends that *Reed* was based on the inevitable discovery exception and has been overruled by *Garcia.* Appellant's argument is misplaced. This Court clearly relied on the attenuation doctrine in reaching its decision. *Reed*, 809 S.W.2d at 945.

Appellant also argues that *Garcia* implicitly vacates all judicially created exceptions, such as the independent source and attenuation doctrines. We disagree. Article 38.23 applies only when evidence is obtained as a result of unconstitutional or unlawful conduct. The attenuation doctrine, on the other hand, pertains to evidence that is discovered in a manner, which is so attenuated from the illegal conduct, that the evidence is no longer viewed as a product of the illegality. Thus, the discovery of evidence sufficiently attenuated from the illegal conduct is not obtained unlawfully. The attenuation doctrine, therefore, does not contradict the plain language of article 38.23. *See State v. Johnson*, 843 S.W.2d 252, 258 (Tex.App.—Texarkana 1992, pet. granted). We hold that its application in Texas jurisprudence is not restricted by *Garcia.*

 Following our decision in *Reed*, we likewise hold that the legal arrest of appel-

lant under the outstanding warrant purged the taint of any illegality of the initial arrest. *See Reed*, 809 S.W.2d at 947. We note that the probable cause authorizing the legal arrest was not developed by using any of the fruits of the illegal arrest. Also, the cocaine was not discovered through any exploitation of the illegal arrest.

When Officer Hulsey detected that appellant had an outstanding warrant, he had probable cause to arrest appellant. Once a police officer has probable cause to make a legal arrest, he has the right to search the arrestee for objects immediately associated with the arrestee's person. *Miller v. State*, 667 S.W.2d 773, 778 (Tex.Crim.App.1984). The search incident to the arrest of appellant yielded the cocaine.

While we agree with appellant that the initial detention was converted into an illegal arrest, intervening circumstances attenuated the connection between the seizure of the cocaine and the illegal arrest. Therefore, the trial court did not abuse its discretion in overruling appellant's motion to suppress. We overrule appellant's first, second, and third points of error.

### HEARSAY TESTIMONY

In his fourth point of error, appellant complains of hearsay testimony admitted during the suppression hearing. Appellant argues that the trial court erred in allowing Officer Bush to testify, over appellant's objection, that one of the people at the apartment complex told him appellant "had a gun earlier."

 At a suppression hearing, police officers can testify about statements they heard that caused them to believe they had reasonable suspicion to detain a suspect for investigation. *McVickers v. State*, 838 S.W.2d 651, 656 (Tex.App.—Corpus Christi 1992, pet. granted). In *McVickers* the court of appeals noted that "[t]he focus of the suppression hearing, and the purpose for which the evidence is offered, is to establish

2. Subsection (b) of article 38.23 states that "[i]t is an exception to the provisions of Subsection (a) of this Article that the evidence was obtained by a law enforcement officer acting in objective good faith reliance upon a warrant issued by a neutral magistrate based on probable cause." TEX CODE CRIM.PROC.ANN. art. 38.23(b) (Vernon Supp.1993).

the information on which the government agent relied, not to establish the truth of that information." *Id.* Therefore, statements that contribute to an officer's reasonable suspicion are not hearsay under the rules of evidence. *See* TEX.R.CRIM.EVID. 801(d); *McVickers*, 838 S.W.2d at 656. We hold that the trial court properly allowed Officer Bush's testimony. We overrule appellant's fourth point of error.

We affirm the trial court's judgment.