**Heather Leann LEWIS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–94–00982–CR.**

Court of Appeals of Texas,
Dallas.

Dec. 21, 1995.

Matt Fry, Dallas, for Appellant.

Sue Korioth, Assistant District Attorney, Dallas, for Appellee.

Before CHAPMAN, DEVANY and WRIGHT, JJ.

## OPINION

CHAPMAN, Justice.

Appellant Heather Leann Lewis appeals from the trial court's denial of her motion to suppress evidence. After the court denied the motion to suppress, appellant pleaded guilty to the offense of possession of heroin. The trial court deferred adjudication of guilt and placed appellant on probation for five years. In her sole point of error, appellant contends that the trial court erred in denying her motion to suppress because the evidence in question was obtained as a result of an illegal detention. We affirm.

## FACTS

At the hearing on the motion to suppress, Dallas Police Officer John Matthews testified that, at about 9:45 p.m. on November 10, 1993, he and his partner, Officer Janse, were on routine patrol. The officers were in the 800 block of West Davis, an area Officer Matthews testified was known for drugs, prostitution, and "lots of violent crime." The officers saw two Caucasian women, one of whom was later identified as appellant, walking by themselves in the predominantly Hispanic area. Officer Matthews described this as "extremely unusual" and testified that the police "frequently stop prostitutes there, so we wanted to check [the women] out." He also testified that the officers wanted to make sure that the women were okay.

The officers pulled up next to the women, asked them to come over to the squad car, and asked what they were doing in the area. The women walked up to the car, and the officers asked for their names and identification. Each of the women gave a name and a date of birth. The officers checked the names on their computer, but the names did not come back. The women told the officers that they had Texas driver's licenses or identification cards, but the computer showed that they did not. The women then gave the officers different personal information, but the new information also did not check out. Officer Matthews testified that one of the women (he did not remember which one) started crying and said that she had warrants out for her arrest. Both of the women then gave their real names, and the officers were able to pull up their information on the computer.

Both women were arrested after the officers confirmed that they each had outstanding warrants. Officer Janse sat in the back

seat of the squad car with appellant after she was arrested. He saw her trying to stuff a cigarette lighter case into the back seat and found heroin inside the case.

Officer Matthews testified that both women were free to leave until the one woman told him about the outstanding warrants. He stated that if he had wanted to detain the women before then, he would have gotten out of the squad car and been more authoritative. When asked what would have happened if the women had refused to speak with the officers, Officer Matthews testified that it would have depended on whether the women "had been snotty and had back-talked us."

## STANDARD OF REVIEW

 It is well settled that the trial court is the sole trier of fact at a hearing on a motion to suppress. *Johnson v. State*, 871 S.W.2d 744, 748 (Tex.Crim.App.1994). The trial judge may accept or reject any or all of a witness's testimony. *State v. Brabson*, 899 S.W.2d 741, 746 (Tex.App.—Dallas 1995, pet. filed). This Court views the evidence adduced at the suppression hearing in the light most favorable to the trial court's ruling. *Daniels v. State*, 718 S.W.2d 702, 704 (Tex. Crim.App.), *cert. denied*, 479 U.S. 885, 107 S.Ct. 277, 93 L.Ed.2d 252 (1986), *overruled on other grounds by Juarez v. State*, 758 S.W.2d 772 (Tex.Crim.App.1988); *Brabson*, 899 S.W.2d at 746. We decide only whether the trial judge improperly applied the law to the facts, and we do not disturb the trial court's findings absent an abuse of discretion. *Brabson*, 899 S.W.2d at 746.

## APPLICABLE LAW

 In her sole point of error, appellant claims her initial detention was illegal because she was not violating any law and no reasonable suspicion existed that she had broken or was about to break any law.[1] Not every encounter between police officers and citizens amounts to a seizure requiring con-

stitutional justification. *Daniels*, 718 S.W.2d at 704 (citing *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). Police officers are as free as anyone else to ask questions of their fellow citizens. *Daniels*, 718 S.W.2d at 704. As long as the person is free to walk away, no Fourth Amendment detention occurs if a police officer merely approaches a person in a public place and asks questions. *Florida v. Royer*, 460 U.S. 491, 497, 103 S.Ct. 1319, 1323–24, 75 L.Ed.2d 229 (1983); *see Holladay v. State*, 805 S.W.2d 464, 471 (Tex.Crim.App.1991). Only when the questioning becomes a detention, however brief, must it be supported by reasonable suspicion. *Daniels*, 718 S.W.2d at 704. To justify such a detention, an officer must have specific articulable facts, which in light of the officer's experience and personal knowledge, together with rational inferences from those facts, would reasonably warrant the intrusion. *Ramirez v. State*, 672 S.W.2d 480, 482 (Tex.Crim.App.1984). The officer must have a reasonable suspicion that some activity out of the ordinary is occurring or has occurred, some suggestion to connect the detained person with the unusual activity, and some indication that the activity is related to a crime. *Johnson v. State*, 658 S.W.2d 623, 626 (Tex. Crim.App.1983).

 In this case, we conclude that the officers' questioning of appellant did not amount to a detention. The officers remained in their car and asked only for the women's names and identification and what they were doing in the area. Although Officer Matthews indicated that the officers may have been more authoritative if the women had refused to speak with them, the officer testified that the women did not refuse to answer their questions. This encounter falls within the range of limited, consensual stops which do not implicate the Fourth Amendment. *See Holladay*, 805 S.W.2d at 471 (officer approached defendant in airport, and defendant consented to talk to him; officer

---

1. In her written motion to suppress, appellant asserted that the heroin was seized in violation of the federal and state constitutions. In her appellate brief, however, appellant provides no substantive analysis and argument in separate grounds on how the protection provided by the Texas Constitution differs from the protection provided by the federal constitution; therefore, only appellant's federal constitutional claim is before this Court. *See Riddle v. State*, 888 S.W.2d 1, 7–8 (Tex.Crim.App.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1701, 131 L.Ed.2d 563 (1995); *Heitman v. State*, 815 S.W.2d 681, 690–91 n. 23 (Tex.Crim.App.1991).

asked defendant if he had arrived on a flight, asked to see defendant's plane ticket, and eventually asked for identification; defendant not detained); *see also Barnes v. State,* 870 S.W.2d 74, 77–78 (Tex.App.—Houston [1st Dist.] 1993, pet. ref'd) (officers approached defendant in parking lot of apartment complex and asked his name, what he was doing in the area, and whether he had drugs; trial court could have concluded there was no detention until officer asked defendant to step outside his car); *Maldonado v. State,* 853 S.W.2d 746, 748 (Tex.App.—Houston [1st Dist.] 1993, no pet.) (officer approached defendant, asked him to remove his hands from his pockets, and asked for identification; defendant was not detained until officer grabbed defendant's arm). The trial court in this case could have properly concluded that the officers did not detain appellant until they arrested her for the outstanding warrants.

██ Even if appellant was illegally detained by the officers, the trial court still properly denied the motion to suppress. Generally, the fruit of the poisonous tree doctrine prohibits the use of evidence obtained following an illegal detention. *Wong Sun v. United States,* 371 U.S. 471, 484, 83 S.Ct. 407, 415, 9 L.Ed.2d 441 (1963); *Welcome v. State,* 865 S.W.2d 128, 133 (Tex. App.—Dallas 1993, pet. ref'd). The attenuation doctrine, however, provides that evidence may be admitted if the connection between the initial illegality and the means through which the evidence was secured is so attenuated as to dissipate the taint. *Welcome,* 865 S.W.2d at 133. Evidence is not classified as a fruit requiring exclusion merely because it would not have been discovered "but for" the primary invasion. *Reed v. State,* 809 S.W.2d 940, 944 (Tex.App.—Dallas 1991, no pet.). The issue is whether the evidence in question has been discovered by exploitation of the primary illegality or instead by means sufficiently distinguishable to be purged of the primary taint. *Id.*

In cases with facts similar to the instant case, this Court has held that the discovery of an outstanding warrant during an illegal detention breaks the connection between the primary taint and the subsequently discover-

ed evidence. *Welcome,* 865 S.W.2d at 134; *Reed,* 809 S.W.2d at 947; *see Johnson v. State,* 496 S.W.2d 72, 74 (Tex.Crim.App. 1973). In *Reed,* this Court determined that officers had, in effect, arrested the defendant without probable cause when they took him from the scene of a suspected drug transaction to the station so that he could be identified. *Reed,* 809 S.W.2d at 944. The defendant later gave the officers his name, and the officers discovered outstanding arrest warrants. *Id.* at 943. The defendant was arrested pursuant to the warrants, and a search incident to arrest revealed cocaine. *Id.* This Court reasoned that, because the probable cause for the arrest warrants was determined independently and judicially before the illegal detention, the legal arrest of the defendant under the warrants purged the taint of any illegality of the initial arrest. *Id.* at 947; *see Welcome,* 865 S.W.2d at 134; *Brooks v. State,* 830 S.W.2d 817, 821 (Tex. App.—Houston [1st Dist.] 1992, no pet.).

██ The same reasoning applies in the instant case. The discovery of the outstanding warrants and appellant's legal arrest under those warrants were intervening circumstances which attenuate the connection between any illegal detention and the discovery of the heroin. The probable cause authorizing appellant's legal arrest was not developed by using the fruits of an illegal detention. The trial court did not abuse its discretion in denying appellant's motion to suppress. We overrule appellant's point of error.

We affirm the trial court's judgment.

DEVANY, Justice, concurring.

I write to express my concerns about the majority's conclusion that "the officers' questioning of appellant did not amount to a detention" and that she was free to leave at any time before the officers discovered the arrest warrant.

From the testimony of the officers, one could not possibly conclude that appellant was free to walk away during the interrogation. The majority tells us that police officers are as free as anyone else to ask questions of their fellow citizens. That statement

is true and case law supports it, but that only describes the *limit* of the police officers' freedom. For example, if someone other than a police officer were to stop a woman at 9:45 p.m. in a high crime area, the reasonable expectation would be that she would not answer any questions and try to walk away. When police officers with badges and guns stop two women simply walking along a public street at night and ask for their names and identification, *they are not free to leave.* To characterize such a stop by police officers as anything less than requiring the citizen to remain until the officers complete their interrogation is but a pretense and ignores reality.

In this case, the officers were patrolling a high crime area known for drugs and prostitution. One of the officers testified that they "wanted to check the women out." Since appellant did not appear to be in any trouble, the purpose of the stop must have been to seek appellant's identity, which is precisely what happened. Appellant did not give her true name. That could have ended the matter. The officers persisted in further identification until the interrogation caused one of the women to break down and cry. The result was the discovery of an outstanding arrest warrant for appellant.

Because the officers discovered appellant possessed heroin *after* her arrest on a valid arrest warrant, I concur with the final result of the majority opinion. My main concern is that the majority opinion sends the wrong message in leading the public to believe that, when a police officer calls a citizen over to a patrol car without an articulable suspicion of a crime, the citizen can ignore the officer and refuse to answer any questions and is free to leave, and, presumably, may take whatever action is necessary to effect such right of departure. This is a dangerous message. To send such a message in an appellate opinion may cause the public to believe that a person may walk away from such a situation with impunity.

The majority should acknowledge the superior right of the police to detain a person under the circumstances of this case. It is but a farce, and a dangerous one at that, to excuse the police officers' *persistent* interrogation of an ostensibly innocent citizen until her identity is established, by opining later that she was free to leave at all times during persistent efforts to establish her identity.