Michael NEESE, Appellant,

v.

The STATE of Texas, Appellee.

No. 09–95–101 CR.

Court of Appeals of Texas,
Beaumont.

Aug. 28, 1996.

Charles Meyers, Lufkin, for appellant.

Clyde M. Herrington, District Attorney, David V. Wilson, II, Assistant District Attorney, Lufkin, for State.

Before WALKER, C.J., and BURGESS and STOVER, JJ.

## OPINION

STOVER, Justice.

Appellant, Michael Neese, appeals from a conviction for possession of a controlled substance, lysergic acid diethylamide (LSD), in an amount greater than four (4) but less than 200 grams. Subsequent to Neese's guilty plea, which was made in accordance with a plea bargain, the trial court sentenced him to twenty years' confinement in the Institutional Division of the Texas Department of Criminal Justice. We reverse and remand the judgment of the trial court.

### Facts

At approximately 11 a.m. on October 20, 1994, Officer Murphy of the Lufkin Police Department received a telephone call from a confidential informant concerning a "guy that was looking to sell some LSD." The informant (a female) gave Officer Murphy the following information:

(a) A red-haired white man named Neese was "looking to sell LSD";

(b) Informant gave the man's address as the house of Becky Dearing (officers already had two controlled substance search warrants at that residence);

(c) Informant told officer she had set up a deal, at officer's request, between the man and the officer for 50 hits of LSD at Winston Park;

(d) Man had gotten in to town from California a couple of days ago, did not have a car, and would have to get a ride.

After receipt of the tip from the informant, Murphy and another officer, Hadnot, went in civilian clothes in an unmarked car to conduct surveillance on Becky Dearing's residence. Based on their surveillance, they were able to corroborate the following details of the informant's tip:

1. At 11:40 a.m. they observed a man with red hair walking up to Becky Dearing's house;

2. At approximately 11:45 a.m., the red-haired man left Dearing's house in a pickup truck driven by a white female (not Becky Dearing).

After observing appellant leave Dearing's house, Murphy and Hadnot called Officers Porter and Bean to make the actual stop of the vehicle because the latter were on patrol in a marked unit.

The drug deal was supposed to occur at Winston Park in the rest rooms. However, the officers stopped the pickup before any drug deal could occur, because it was getting close to noon and there might be kids in the park and people eating lunch. According to Officer Murphy, the officers who pulled the truck over on an overpass on Angelina Street could not tell at that point where Neese was going. Once the stop was made, Officer Murphy exited from the patrol car and approached the passenger's door, while Officer Bean moved to the driver's door. Officer Murphy asked appellant to step out of the truck and had him put his hands on the truck while Murphy "patted him down for weapons." No weapons were found on Neese. According to Officer Murphy, Neese was handcuffed at that point—prior to Murphy talking to the driver, prior to the search of the vehicle, and prior to the discovery of a "blue warrant" on appellant.

After approaching the driver, Murphy told her why they had stopped her and then asked for consent to search the vehicle. The driver consented. Finding no narcotics in the truck, the officers released the driver.

At that point, Officer Bean informed Murphy of an outstanding warrant for a parole violation out of Austin on Neese. Bean confirmed the warrant was still active. On the basis of the outstanding warrant, Neese was taken to the county jail. In the meantime, Officers Murphy, Walker, and Hadnot went to Becky Dearing's house. They asked her for consent to search her residence and her

grandmother's residence, over which Becky exercised control, as well as the premises outside the houses. Becky told the officers where Neese was staying, and they limited their search to that part of the premises. Finding no contraband, the officers returned to the county jail where Murphy talked to Bean. Officer Bean informed Murphy that Neese stated he had left all of the dope at the house, with the exception of 50 hits of LSD which Neese said he had eaten when he was stopped.

Subsequent to his conversation with Bean, Officer Murphy did not seek to obtain a search warrant, but, instead, approached Neese in the sheriff's office. Murphy told Neese he (Murphy) was returning to Dearing's house with a search warrant, and, if, upon searching her residence, he discovered contraband, she was going to be charged with possession, since the contraband was in her residence. In response to Murphy's comments, Neese told him he would show the officers the location of the dope "if he could go back over there and hug and kiss Becky goodbye." Neese took the officers to a shed at the back of the property where he pointed out the location of the contraband in a cardboard box with Christmas ornaments. Officer Murphy pulled out 900 hits of LSD. Neese also kissed Becky goodby.

On cross-examination, Officer Murphy testified the stop the officers made was based entirely on the informant's tip a drug deal was going down. Murphy further testified he never *Mirandized*[1] Neese, and, to his knowledge, no one else did either.

The first six of appellant's seven points of error allege trial court error in the denial of Neese's motion to suppress on Fourth Amendment grounds; the seventh point of error alleges the trial court erred in failing to suppress the testimony of Officer Murphy on the grounds Neese had not been given his *Miranda* warnings prior to a custodial interrogation.

### Jurisdiction

We will not address Neese's seventh point of error, because he failed to meet

the requirements of TEX.R.APP. P. 40(b)(1), which states in pertinent part as follows:

> Appeal is perfected in a criminal case by giving timely notice of appeal ... Such notice shall be sufficient if it shows the desire of the defendant to appeal from the judgment or other appealable order; but if the judgment was rendered upon his plea of guilty or nolo contendere ... and the punishment assessed does not exceed the punishment recommended by the prosecutor and agreed to by the defendant and his attorney, in order to prosecute an appeal for a nonjurisdictional defect or error that occurred prior to entry of the plea the notice shall state that the trial court granted permission to appeal or shall specify that those matters were raised by written motion and ruled on before trial.

In construing Rule 40(b)(1), the Texas Court of Criminal Appeals has held in order for a defendant to prosecute an appeal for either a nonjurisdictional defect occurring before or after the plea or an error occurring prior to the entry of the plea, the defendant must state in his notice of appeal the trial court granted him permission to appeal or that the matters he now seeks to appeal were raised by written motion and ruled on by the trial court prior to the entry of his plea. *See Rhem v. State,* 873 S.W.2d 383, 384 (Tex. Crim.App.1994); *Jack v. State,* 871 S.W.2d 741 (Tex.Crim.App.1994); *Davis v. State,* 870 S.W.2d 43 (Tex.Crim.App.1994). Compliance with Rule 40(b)(1) is jurisdictional, and a general notice of appeal failing to comply with the requisite recital of the notice of appeal under Rule 40(b)(1) does not confer jurisdiction on this Court except to consider jurisdictional issues. *Montalbo v. State,* 885 S.W.2d 160, 161 (Tex.Crim.App.1994); *Davis,* 870 S.W.2d at 45–46.

Neese's notice of appeal encompasses only the points raised in his motion to suppress:

### I.

Pursuant to Art. 34.02(sic) of the Texas Code of Criminal Procedure and Rule

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

40D(1)(sic) of the Texas Rules of Appellate Procedure, Defendant herein files his notice of intention to appeal his conviction based upon matters raised by his written Motion to Suppress filed March 2, 1995, in the District Court of Angelina County, and ruled on March 29, 1995, which date was prior to the entry of judgment.

### II.

Furthermore, Defendant would show that he requested permission to appeal from the District Court which took his plea bargain, and that said permission was granted.

Likewise, the court's permission to appeal is directed only to the matters in the motion to suppress:

On the 29th day of March, 1995, hearing was held before me on the Defendant's Motion To Suppress Evidence in the above captioned case.

Upon request by the Defendant, permission is hereby granted by the 217th Judicial District Court of Angelina County, Texas for the Defendant, MICHAEL NEESE, to appeal this case.

Seeking to suppress all evidence and all information gathered as a result of the illegal stop and arrest, appellant alleges violations of the Fourth and Fourteenth Amendments of the United States Constitution and Art. 1, Sec. 9 of the Texas Constitution. Appellant does not allege in his written motion to suppress any Fifth Amendment grounds relating to the failure to *Mirandize* appellant; the only reference to the lack of *Miranda* warnings is found in the hearing on the Motion to Suppress where Officer Murphy testifies that he did not give appellant any *Miranda* warnings. Appellant sought no ruling from the court on that ground and received none. In addition, appellant's notice of appeal does not contain any reference to Fifth Amendment violations or *Miranda* warnings. Finally, the court's permission to appeal does not include any reference to the *Miranda* issue either. It is on appeal appellant first raises the *Miranda* issue in his final point of error.

■ In a felony case where the defendant pleads guilty or no contest pursuant to a plea bargain agreement and where punishment is assessed in accordance with that agreement, the defendant must obtain permission to appeal any matter except:

1. Rulings on written pretrial motions (also referred to in Rule 40(b)(1) as "error[s] that occurred prior to entry of the plea"); and

2. Jurisdictional errors.

*Hutchins v. State,* 887 S.W.2d 207 (Tex. App.—Austin 1994, pet. ref.).

■ Moreover, in order for such a defendant to appeal any matter except a jurisdictional issue, the notice of appeal itself must state either the trial court granted permission to appeal or the appeal concerns a matter raised by written motion and ruled on before trial. *Id.* at 209. Because of appellant's failure to follow the requirements of Rule 40(b)(1), this Court does not have jurisdiction to review point of error seven.

### Fourth Amendment Issues

Although we do not have jurisdiction to address the *Miranda* issue raised in point of error seven, we are under no such constraints in regard to the Fourth Amendment issues raised in points of error one through six, which are argued together by appellant in his brief on appeal. In his Notice of Appeal, Neese specifically states he is appealing "his conviction based upon matters raised by his written Motion to Suppress filed March 2, 1995, in the District Court of Angelina County, and ruled upon on March 29, 1995, which date was prior to the entry of judgment."

In points of error one through six, appellant alleges violation of his Fourth and Fourteenth Amendment rights under the United States Constitution and Art. 1, Sec. 9 of the Texas Constitution. He seeks to suppress the testimony of Officer Murphy, as well as the evidence (contraband) itself, on the grounds the initial warrantless arrest was without probable cause and does not fall

within the exceptions to the requirement of a warrant. TEX.CODE CRIM. PROC. ANN. arts. 14.01, 14.03, 14.04 (Vernon 1977 & Supp. 1996). Without probable cause, the arrest was illegal, and any evidence, whether physical evidence or inculpatory statements, obtained as a result of that illegal arrest must be suppressed.

The State contends the stop was nothing more than a temporary investigative detention, followed by a legal arrest on a blue warrant. As justification for the initial stop and temporary detention, the State points to the specific, articulable facts given by the informant as providing reasonable suspicion to connect Neese with criminal activity.

■■■ It is well settled a police officer may, in appropriate circumstances and in an appropriate manner, approach an individual for purposes of investigating possible criminal behavior even when there is no probable cause to make an arrest. *See Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). To justify this temporary detention, an officer must have specific, articulable facts, which considering his experience and personal knowledge and his inferences from those facts, would reasonably warrant an intrusion on the freedom of the citizen stopped for investigation. *Id.* 392 U.S. at 21, 88 S.Ct. at 1879–1880, 20 L.Ed.2d at 905–906. Once a suspect is lawfully detained for investigation, the officer may conduct a limited search for weapons where it is reasonably warranted for his safety or the safety of others. *Id.* 392 U.S. at 27, 88 S.Ct. at 1883, 20 L.Ed.2d at 909.

■■■ The temporary detention in the instant case was based solely on the anonymous tip. As a general rule, something more than an anonymous tip is required to provide the reasonable suspicion necessary to make a valid investigatory stop of a person suspected of criminal activity. *Alabama v. White*, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). Standing alone, an anonymous tip seldom demonstrates the informant's basis of knowledge or veracity. *Id.* 496 U.S. at 329,

110 S.Ct. at 2415–2416, 110 L.Ed.2d at 308. That lack, however, may be compensated for by the corroborative efforts of police officials who verify the details of the information supplied them. *See Illinois v. Gates*, 462 U.S. 213, 242–243, 103 S.Ct. 2317, 2334–2335, 76 L.Ed.2d 527, 550–552 (1983). An officer's prior knowledge, his experience, and his corroboration of the details of the tip may be considered in giving the anonymous tip the weight it deserves. *See White*, 496 U.S. at 330, 110 S.Ct. at 2416, 110 L.Ed.2d at 308–309.

In *White*, the information supplied by the anonymous informant to the police included the following details:

> White would be leaving 235–C Lynwood Terrace Apartments at a particular time in a brown Plymouth station wagon with the right taillight lens broken, that she would be going to Dobey's Motel and that she would be in possession of about an ounce of cocaine inside a brown attache case.

*Id.* 496 U.S. at 327, 110 S.Ct. at 2414–2415, 110 L.Ed.2d at 306–307. The officers corroborated the informant's details *prior* to the stop of the vehicle, with the exception of the woman's name, the precise apartment number, the destination as being the Dobey Motel, and the actual cocaine possession.

Just as in *Gates*, there was " 'virtually nothing from which one might conclude that [the caller] is either honest or his information reliable; likewise the [tip] gives absolutely no indication of the basis for the [caller's] predictions regarding [Vanessa White's] criminal activities.' " *White*, 496 U.S. at 329, 110 S.Ct. at 2415–2416, 110 L.Ed.2d at 308, quoting *Gates*, 462 U.S. at 227, 103 S.Ct. at 2326, 76 L.Ed.2d at 527. There was, however, independent corroboration by the police of significant aspects of the informer's predictions. *White*, 496 U.S. at 332, 110 S.Ct. at 2417, 110 L.Ed.2d at 310.

Distinguishing between the standards necessary to establish probable cause and reasonable suspicion, the Supreme Court held the anonymous tip along with the indepen-

dent police corroboration did meet the standard of reasonable suspicion required for an investigatory stop, although it was a "close case." *Id.* 496 U.S. at 330, 110 S.Ct. at 2416, 110 L.Ed.2d at 308–309. The reasonable suspicion standard for an investigatory stop is less demanding than the probable cause standard for an arrest or issuance of a search warrant under the Fourth Amendment not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause. *Id.* 496 U.S. at 330, 110 S.Ct. at 2416, 110 L.Ed.2d at 308–309.

■ Although the matter in the instant case is likewise a close question, we conclude the trial court correctly applied the law to the facts; the temporary investigative detention was a valid one, because, although there is no evidence of the reliability of the informant, the officers did have specific, articulable facts (corroborated by police officers) which provided reasonable suspicion to connect appellant with criminal activity and to temporarily detain him. The officers were able to verify the presence of a red-haired man at Becky Dearing's house, which they already knew to be a place of drug activity; the man did not appear to have a car; and he did get a ride in a vehicle as a passenger after the informant told officers she had a drug deal set up in Winston Park. Based on the verification of that information, the officers had reasonable suspicion to temporarily detain Neese and pat him down. That information, however, did not supply probable cause to handcuff and arrest appellant after they patted him down and found nothing.

■ We agree with appellant the initial detention was converted into an illegal arrest once Neese was handcuffed. The handcuffing of appellant occurred after officers patted him down and found nothing and prior to the officers' conversation with the female driver, prior to the search of the pickup, and prior to

the discovery of the blue warrant for Neese's arrest. Nothing occurred between the stop, the pat down, and the handcuffing that elevated the reasonable suspicion to temporarily detain appellant to probable cause to arrest him.

■ The Supreme Court in *Gates,* 462 U.S. at 238, 103 S.Ct. at 2332, 76 L.Ed.2d at 527, reaffirmed the totality of the circumstances analysis that has traditionally informed probable cause determinations. The task of the issuing magistrate, or in this case, the trial court, is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit, or testimony, before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Id.* 462 at 238, 103 S.Ct. at 2332, 76 L.Ed.2d at 527. And the duty of a reviewing court is simply to insure the magistrate, or trial court, had "substantial basis" for concluding probable cause existed. *Id.* 462 U.S. at 238–239, 103 S.Ct. at 2332–2333, 76 L.Ed.2d at 527. The information supplied to the officers, although providing reasonable suspicion for detention, did not demonstrate a fair probability contraband would be found on Neese or in the pickup. The fact that an anonymous informant told the police a red-haired man is looking to sell LSD, that he is at Becky Dearing's house, that he does not have a car, and that she has set up a drug buy for the man does not rise to the probable cause standard.

■ As testified to by Officer Murphy, the only basis for the stop and arrest of Neese was the tip from a confidential informant whose veracity, reliability, and credibility were never established. We recognize, of course, that those elements, though highly relevant in determining the value of the informant's tip, are not finally the legal standard for determining the existence of probable cause for a warrantless search. *See Carroll v. State,* 911 S.W.2d 210, 216 (Tex.App.—Austin 1995, no pet.). The "to-

tality of the circumstances" test determines whether probable cause exists, rather than the rigid two-pronged test under *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). *Gates,* 462 U.S. at 213, 103 S.Ct. at 2319–2320, 76 L.Ed.2d at 527. Under the totality of circumstances test, the issue is whether there is probable cause to believe evidence of a crime will be found in a particular place. *Gates* 462 U.S. at 213, 103 S.Ct. at 2319–2320, 76 L.Ed.2d at 527; *Eisenhauer v. State,* 678 S.W.2d 947, 952–953 (Tex.Crim.App.1984).

▆▆▆ As the Court of Criminal Appeals has stated, "[i]t is no longer imperative that the record reveal both that the informant is, if not generally credible, at least reliable on the specific occasion in question, and that the informant has a substantive basis for knowing whereof he speaks. Compelling evidence of one prong will make up for a deficiency in the other. . . ." *State v. Carter,* 915 S.W.2d 501, 503 (Tex.Crim.App.1996).

In the instant case, there is no evidence in the record of the reliability or credibility of the informant. Officer Murphy offers no testimony the informant had given information in the past or that he knows her to be reliable or credible. There is no testimony whatsoever about the informant other than that she called with the information.

As to the substantive basis for knowing whereof she speaks, there is also no evidence in the record of any basis for her knowledge. Officer Murphy testified in the hearing on the motion to suppress that the informant stated she knew a guy who "was looking to sell LSD." She never stated she had seen appellant with LSD or any other drug or that she had witnessed or overheard him trying to sell it. Moreover, there is no basis for that part of the informant's tip concerning Neese's presence at Dearing's house—no testimony as to whether she saw him there or whether someone told her he was there. We simply do not know how she knew he was there or how she knew he had drugs.

Although "compelling evidence of one prong will make up for a deficiency in the other . . . ," there is no evidence in the instant case of either prong. The totality of the circumstances test was not met. Since the only basis for the initial arrest is the informant's tip, and since the informant's tip does not meet the applicable legal standard for supplying probable cause, the trial court abused its discretion in denying the motion to suppress.

▆▆▆ The State contends Neese was not arrested until after the discovery of the blue warrant. Such is not the case. An arrest occurs when a person's liberty of movement is restricted or restrained. *Burkes v. State,* 830 S.W.2d 922, 925 (Tex. Crim.App.1991). Whether a detention is an actual arrest or an investigative detention depends on the reasonableness of the intrusion under all of the facts. *See United States v. Sharpe,* 470 U.S. 675, 685, 105 S.Ct. 1568, 1574–1575, 84 L.Ed.2d 605, 615 (1985). The record in the instant case provides only the officer's testimony that appellant was handcuffed after his exit from the car and the officer's pat down. There are no other circumstances which explain the reasonableness or justification of the intrusion of the handcuffs. It was noon time, not dark; the officer testified the car in which appellant was riding was stopped by the police in a commercial (business) area of town, not in a high crime area; there were no traffic violations, no suspicious activities; the officer never testified he handcuffed Neese for safety reasons. Without some evidence in the record of the reasonableness of the handcuffs, we conclude the placing of handcuffs on appellant prior to the discovery of the blue warrant constituted an illegal arrest for which there was no probable cause.

▆▆▆ Without question, the trial court is the sole trier of fact at a hearing on a motion to suppress and is the sole judge of the credibility of witnesses and the weight of their testimony. *Banda v. State,* 890 S.W.2d 42, 51 (Tex.Crim.App.), *cert. denied,* —— U.S. ——, 115 S.Ct. 2253, 132 L.Ed.2d 260 (1995);

*Johnson v. State,* 871 S.W.2d 744, 748 (Tex. Crim.App.1994). The reviewing court does not engage in its own factual review, and so long as the record supports the trial court's findings, the reviewing court is not at liberty to disturb them. *Banda,* 890 S.W.2d at 51–52.

▮ The Court of Criminal Appeals has recently discussed the scope of appellate review with regard to evidentiary suppression rulings by trial courts in *DuBose v. State,* 915 S.W.2d 493, 497–498 (Tex.Crim. App.1996):

> When the courts of appeals analyze a trial court's denial of a motion to suppress evidence they must be deferential to the trial court's judgment, not only as to the historical facts, but also as to the legal conclusions to be drawn from the historical facts—at least so long as it appears the trial court has applied the correct standard of law to those historical facts. They should reverse the trial court's decision only for an abuse of discretion; that is to say, only when it appears that the trial court applied an erroneous legal standard, or when no reasonable view of the record could support the trial court's conclusion under the correct law and the facts viewed in the light most favorable to its legal conclusion.

Reviewing courts are not to conduct a *de novo* review of the trial court's probable cause determination. *Carter,* 915 S.W.2d at 504. As long as there is a "substantial basis" in the record to support the trial court's ruling, it is impervious to appellate reversal. *Id.* This Court views the evidence adduced at the suppression hearing in the light most favorable to the trial court's ruling. *Lewis v. State,* 915 S.W.2d 51, 53 (Tex.App.—Dallas 1995, no pet.). The trial judge may accept or reject any or all of a witness's testimony. *Id.* In the instant case, we find no "substantial basis" in the record to support the trial court's ruling on the motion to suppress. By denying the motion to suppress, which raised Fourth Amendment grounds of illegal arrest, the trial court impliedly found there was probable cause for appellant's arrest. The only basis for the initial arrest was the informant's tip, which, under the totality of the circumstances test, would not permit the conclusion the police had probable cause to arrest appellant. In the instant case, we believe the record does not support the trial court's conclusion under the correct law.

▮ We, therefore, agree with appellant the initial detention was converted into an illegal arrest. Since the arrest was illegal, any evidence acquired in violation of the Fourth Amendment to the United States Constitution must be excluded under the "fruit of the poisonous tree" doctrine. *See Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). As explained in *Wong,* the "fruit of the poisonous tree" doctrine excludes as direct evidence not only the direct products but also the indirect products of Fourth Amendment violations. *Id.* 371 U.S. at 485, 83 S.Ct. at 416, 9 L.Ed.2d at 453–454.

▮ In determining whether the evidence suppressed by the trial court was the fruit of appellee's illegal arrest, the critical issue is whether the evidence was gained by exploitation of that illegality. *Id.* 371 U.S. at 488, 83 S.Ct. at 417–418, 9 L.Ed.2d at 455. There are, of course, exceptions to the general rule. One of those exceptions, the attenuation doctrine, provides that evidence may be admitted if the connection between the initial illegality and the means through which the evidence was secured is so attenuated as to dissipate the taint. *See Taylor v. Alabama,* 457 U.S. 687, 102 S.Ct. 2664, 73 L.Ed.2d 314 (1982); *Welcome v. State,* 865 S.W.2d 128, 133 (Tex.App.—Dallas 1993, pet. ref.). Where the evidence is sufficiently attenuated from the illegal conduct, it is not "obtained" from that conduct and is admissible. *Johnson,* 871 S.W.2d at 750; *Laca v. State,* 893 S.W.2d 171 (Tex.App.—El Paso 1995, pet. ref.). "The discovery of an outstanding warrant during an illegal detention of an individual may break the connection between the primary taint and subsequently discovered evidence." *Welcome,* 865 S.W.2d at 133.

In the instant case, the State contends even if the stop and arrest were illegal on Fourth Amendment grounds, the contraband evidence is still admissible on the basis of the attenuation doctrine. According to the State, the discovery of the outstanding blue warrant during appellant's detention and arrest breaks the connection between the primary taint and the subsequently discovered evidence.

■ An examination of attenuation is based on four factors:

1. whether *Miranda* warnings were given;

2. the temporal proximity of the arrest and the confession (or statement);

3. the presence of intervening circumstances; and

4. the purpose and flagrancy of the official misconduct.

*See Brown v. Illinois,* 422 U.S. 590, 603–604, 95 S.Ct. 2254, 2261–2262, 45 L.Ed.2d 416, 427 (1975).

■ As to the first factor, Officer Murphy testified he did not give *Miranda* warnings to Neese and, to his knowledge, no one else did. Subsequent to Neese's arrest under the outstanding warrant, he was taken to the county jail. After Murphy returned from the initial search of Dearing's residence (to which Dearing had consented), he approached Neese at the sheriff's office and, without giving any *Miranda* warnings, told Neese he (Murphy) was going to obtain a search warrant for Becky Dearing's house and charge her with possession if he found any contraband on the premises. In reply to this coercive statement (to which a response was expected), Neese agreed to show the officers the whereabouts of the contraband at Dearing's house. Factor one, the total lack of *Miranda* warnings, weighs against the State.

As to the second *Brown* factor, the record does not reveal the amount of time which elapsed between the arrest and appellant's statements and the discovery of the contraband. We know Neese was stopped and arrested by officers around noon on October 20, 1994. During the detention of Neese out on the highway, officers discovered the blue warrant and took him to the police station. Subsequent to the officer's search of Dearing's house, appellant made his inculpatory statements to Officer Murphy. How many hours elapsed between the illegal arrest and the statements is unknown, but there is nothing in the record to indicate the events did not occur that same afternoon. Without evidence of the time lapse, however, the temporal proximity of the illegal arrest to the statement cannot be a determinative factor in the instant case.

The third *Brown* factor is the presence of intervening circumstances. The record reflects an outstanding arrest warrant (a blue warrant for parole violation) existed for appellant. Several cases have held the discovery of an outstanding warrant during an illegal detention breaks the connection between the primary taint and the subsequently discovered evidence. *Lewis,* 915 S.W.2d at 54; *Welcome,* 865 S.W.2d at 133; *Brooks v. State,* 830 S.W.2d 817 (Tex.App.—Houston [1st Dist.] 1992, no pet.); *Reed v. State,* 809 S.W.2d 940 (Tex.App.—Dallas 1991, no pet.).

Without question, the blue warrant in the instant case was an intervening circumstance which provided probable cause for a legal arrest of appellant. Thus, when appellant was taken to the county jail, he was under legal arrest. However, the evidence sought to be suppressed—Officer Murphy's statements and the contraband itself—was not discovered in a manner which is so attenuated from the illegal conduct that the evidence is no longer viewed as a product of the illegality. *See Welcome,* 865 S.W.2d at 134. Unlike *Lewis,* 915 S.W.2d at 51, or *Reed,* 809 S.W.2d at 940, this was no inventory search after an arrest and no search incident to arrest. On the contrary, this was a search conducted after calculated, coercive elicitation by police of an inculpatory statement from appellant. The evidence sought by police at the illegal arrest was the same evidence sought after the discovery of the out-

standing warrant. The officers' purpose—the discovery of the LSD—remained constant from the point of the illegal arrest on through the legal arrest and the subsequent events at the county jail. Once at the jail, the officer sought to elicit information from appellant as to the whereabouts of the LSD in a coercive manner such that appellant's statements were not sufficiently an act of free will to purge the primary taint of the illegal arrest. The existence of the outstanding warrant in this case does not attenuate the taint of the illegal stop and arrest.

As to the fourth factor, we note the officers based their stop and arrest of appellant on the tip of a confidential informant. Although we have found the tip of the confidential informant did not provide probable cause for the officers to arrest appellant, we do not believe the officers' reliance on that tip was flagrantly abusive of Fourth Amendment rights.

What was flagrantly abusive, however, was the conduct of Officer Murphy in informing Neese of Murphy's intention of obtaining a search warrant for Dearing's residence and of charging her with possession if the officer found any contraband therein. Such a statement was clearly coercive and flagrantly abusive of Neese's Fourth Amendment rights. As noted above, Neese's statement was not sufficiently an act of free will to purge the taint of the illegal arrest. It is this type of conduct for which the exclusionary rule exists—namely to deter government overreaching and wrongdoing during the investigation of a crime. *See Wong Sun,* 371 U.S. at 471, 83 S.Ct. at 407, 9 L.Ed.2d at 441. The fourth *Brown* factor weighs heavily in favor of appellant.

In the instant case, we find the first and fourth of the *Brown* factors to be determinative. The failure to give *Miranda* rights and the coercive conduct of the officer demonstrate flagrant abuse of appellant's Fourth Amendments rights. Consequently, we conclude not only was the initial arrest illegal, but there was also no attenuation of the primary taint of the illegal arrest. The trial court abused its discretion in failing to suppress the testimony of Officer Murphy, as well as failing to suppress the evidence itself.

Since we sustain points of error one, five, and six, we need not consider points of error two, three, and four. Therefore, we reverse the judgment below and remand the cause for new trial.